## Metropolitan Life Insurance Company of New York v. Gerald C. Mann, Attorney General of Texas et al.

No. 8019.   Decided January 27, 1943.
Rehearing overruled February 24, 1943.
(168 S. W., 2d Series, 212.)

*Henry, Bickett & Bickett and Johnson & Rogers,* all of San Antonio, for relator.

*Gerald C. Mann,* Attorney General, *D. Burle Daviss* and *George W. Barcus,* Assistants Attorney General, for respondents.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a mandamus proceeding, instituted directly in this Court by Metropolitan Life Insurance Company of New York, a foreign life insurance company, duly licensed to do business in this State, as relator, against Honorable Gerald C. Mann, Attorney General of Texas, and Honorable George H. Sheppard, State Comptroller of Texas, to compel them to approve a certain money claim of relator against the State of Texas. The facts are undisputed; therefore only law questions are involved.

The Forty-seventh Legislature of this State made an appropriation to pay this insurance company the sum of $7,920.00 as "refund of occupation tax erroneously collected." Acts 47th Legislature, 1941, chap. 621, page 1365. The bill making this appropriation contains the following provision:

"Sec. 2. It is specifically provided herein that before any claim shall be paid from funds hereby appropriated the same shall have the approval of the State Comptroller, and the Attorney General. It is further provided that any claim involving the refund of a franchise tax shall also carry the approval of the Secretary of State in addition to the other officials herein named." Acts 47th Leg., p. 1372.

■ Since no franchise tax is involved in this action, the Secretary of State is neither a necessary nor a proper party.

■■ The agreed statement of facts in this case shows that the relator paid to the State, as occupation taxes for the year 1939, levied under Article 4769 of our Civil Statutes, the sum of $43,584.29. The agreed statement of facts further shows that included in the sum just mentioned was $7,920.00, which the relator did not owe. In other words, the relator paid as taxes $7,920.00 more than it owed, and more than was levied by the statute just above mentioned. It is this sum that the appropriation above described was made to refund. The respondent contend that the sum overpaid was paid voluntarily by the relator. The relator contends that such sum was paid by it under duress. It is admitted by both relator and respondents that if this overpayment was made under duress, relator is entitled to the relief here prayed for by it. On the other hand,

it is admitted by all parties to this litigation that if such overpayment was not made under duress, relator is entitled to no relief whatever in this proceeding. Such admissions are in accordance with the well-settled law of this State. Austin National Bank v. Sheppard, 123 Texas 272, 71 S. W. (2d) 242, and authorities there cited; National Biscuit Co. v. State, 134 Texas 293, 135 S. W. (2d) 687; Union Central Life Ins. Co. v. Mann, 138 Texas 242, 158 S. W. (2d) 477. In this connection, it is the law that duress in the payment of illegal taxes may be either express or implied, and the legal right and duty to repay is the same in each instance. Austin National Bank v. Sheppard, supra.

Before proceeding further we deem it necessary to mention certain of our insurance statutes. Such statutes are Subdivisions 1 and 13 of Article 4682, and Articles 4769, 4770, and 4775, of our Civil Statutes.

Subdivision 1 of Article 4682 makes it the duty of the Insurance Commissioner to execute our insurance laws and see that all laws respecting insurance and insurance companies are faithfully executed.

Subdivision 13 of Article 4682 makes it the duty of the Insurance Commissioner to furnish to insurance companies required to report to him the necessary blank forms for the statements or reports required. To our minds, such statute contemplates that the Insurance Commissioner has the power, and rests under the duty, to prescribe the forms of such reports; and, further, such statute contemplates that insurance companies shall conform their reports to the forms prescribed by the Commissioner, as long as such Commissioner acts within his legal rights.

At the time here involved, and so far as applicable here, Article 4769 read as follows:

"Each life insurance company not organized under the laws of this State, transacting business in this State, shall annually, on or before the 1st day of March, make a report to the Commissioner, * * * which shall show the gross amount of premiums collected during the year ending on December 31st, preceding, from citizens of this State upon policies of insurance. Each such company shall pay annually a tax equal to three and three-fourths (3-3/4) per cent. of such gross premium receipts. * * *

Such taxes shall be for and on account of the business transacted within this State during the calendar year in which such premiums were collected, or for that portion thereof during which the company shall have transacted business in this State. * * *."

The above statute levied an annual tax equal to three and three-fourths per cent. of gross premium receipts. Also, such statute provided for certain reductions, depending on certain contingencies not applicable here.

Article 4770 reads as follows:

"Upon the receipt of sworn statements showing the gross premium receipts of such company, the Commissioner of Insurance shall certify to the State Treasurer the amount of taxes due by such company for the preceding years, which taxes shall be paid to the State Treasurer for the use of the State, by such company. Upon his receipt of such certificate, and the payment of such tax, the treasurer shall execute a receipt therefor, which receipt shall be evidence of the payment of such taxes. No such life insurance company shall receive a certificate of authority to do business in this State until such taxes are paid. If, upon the examination of any company, or in any other manner, the Commissioner of Insurance shall be informed that the gross premium receipts of any year exceed in amount those shown by the report, thereof, theretofore made as above provided, it shall be the duty of such Commisisoner to file with the State Treasurer a supplemental certificate showing the additional amount of taxes due by such company, which shall be paid by such company upon notice thereof. The State Treasurer if, within fifteen days after the receipt by him of any certificate or supplemental certificate provided for by this article, the taxes due as shown thereby have not been paid, shall report the facts to the Attorney General, who shall immediately institute suit in the proper court in Travis County to recover such taxes."

Article 4775 reads as follows:

"If any life insurance company, while holding a certificate of authority to transact business in this State, shall fail or refuse to comply with any of the provisions or requirements of this chapter, the Commissioner upon ascertaining such fact, shall notify such company by actual notice in writing delivered

to an executive officer of such company, of his intention to revoke its certificate of authority to transact business in this State at the expiration of thirty days after the mailing of such registered letter, or the date upon which such actual notice is served. If such provisions or requirements are not fully complied with upon the expiration of said thirty days, it shall be the duty of said Commissioner to revoke the certificate of authority of such company. In case of such revocation, such company shall not be entitled to receive another certificate of authority for a period of one year, and until it shall have fully and in good faith complied with all such provisions and requirements of this chapter. Any company feeling itself aggrieved by the action of the Commissioner in revoking its certificate of authority to do business in this State may bring suit against him in Travis County to annul and vacate the order revoking such certificate."

We deem it expedient to here state certain additional facts shown by this record. Relator is a life insurance company, duly organized under the laws of New York. At all times here involved it had a certificate authorizing it to do business in Texas, and was exercising the same. On the 26th day of February, 1940, relator, acting under the provisions of Article 4769, supra, made its report for the year 1939 to the Insurance Commissioner. This report was made on a form prescribed by the Commissioner and was in full conformity therewith. Also, relator paid occupation taxes levied by Article 4769, supra, in full conformity with such form. The form, in legal effect, demanded that such taxes be paid in conformity therewith. This is evident because the form, in effect, required relator to pay the very illegal taxes this appropriation was made to refund. The form contained at the very beginning a very pertinent admonition or reminder. Such admonition or reminder reads as follows:

"The officers of any company who knowingly submit under oath a tax return under which the amount paid is less than the amount actually due the State under its laws render themselves and the company subject to all the penalties provided by law for such action."

To our minds the part of the report form just above quoted, in legal effect, was and is a statement that a failure, on the part of the relator, to make its report in conformity therewith, and so pay its taxes, would result in its being subjected to the penalties prescribed by our laws. One of these penalties was

that it would not receive a renewal of its certificate to do business in Texas. Article 4769, supra. The withholding of such certificate would have compelled relator to cease writing insurance in this State, and thus would have subjected it to a great inconvience, and financial loss. No court action was, or is, required to enable the Commissioner to withhold a renewal certificate. Taxes paid under the circumstances we have detailed are taxes paid under duress. Austin National Bank v. Sheppard, supra. In the case just cited we held that when illegal taxes are demanded by a State officer under a statute which gives such officer the power to forfeit the right of the concern on whom the demand is made to do business in this State without any court proceeding, the concern on whom such demand is made is not required to take the risk of having its business ended while the invalidity of the tax demanded is being adjudicated in the court.

Respondents contend that these taxes were not paid under duress because Article 4770, supra, does not authorize the Insurance Commissioner to refuse to issue a renewal permit to a life insurance company if such company pays the taxes shown by its report. Stated in another way, respondents contend that the right to withhold a renewal certificate depends solely on whether or not the taxes shown by the report are paid, and that regardless of whether or not such report shows all the taxes actually due. We are unable to agree to this construction of the statute. The statute requires the Commissioner to certify to the State Treasurer the amount of taxes due. Certainly this does not confine the Commissioner's certificate to the amount shown by a report if such report is incorrect. To so hold would be to add something to the statute not contained therein. The statute says that "the Commissioner shall certify to the State Treasurer the amount of taxes due by such company for the preceding year, * * *." The construction contended for by the respondents would call on us to add to the statute, the additional provision, *as shown by such report*, and would compel the Commissioner to issue a renewal certificate even though he knew the insurance company involved had not reported all taxes due. It is true that Article 4770 provides a remedy by suit for the collection of unpaid taxes due under Article 4769, but such remedy is additional, and not exclusive.

To our minds the construction we have given Article 4770 is made certain by the provisions of Article 4775, supra. This

last mentioned statute authorizes the Commissioner, by following a certain prescribed procedure, to revoke, without any court action, any certificate already issued, for a violation of any of the provisions of Title 78, of which it is a part. Article 4769, which levies the tax here involved, is also a part of Title 78. It follows that a failure to pay any taxes due under Article 4769 would violate a provision of Title 78, and would authorize the Commissioner to revoke the certificate of the offending company after the issuance thereof. It certainly was not the intention of the Legislature to require a certificate to be issued under Article 4770, when such certificate is subject, at the very time of issuance, to be revoked under Article 4775.

The mandamus here prayed for by relator is awarded.

Opinion delivered January 27, 1943.

Rehearing overruled February 24, 1943.