GUARANTEE MUTUAL LIFE INSURANCE
COMPANY, Appellant,

v.

William A. HARRISON, Commissioner of
Insurance, et al., Appellees.

No. 10968.

Court of Civil Appeals of Texas.

Austin.

May 23, 1962.

Rehearing Denied June 13, 1962.

Dan Moody, Jr., Austin, for appellant.

Will Wilson, Atty. Gen., Bob E. Shannon and Dudley D. McCalla, Asst. Atty. Gen., for appellees.

RICHARDS, Justice.

Guarantee Mutual Life Insurance Company, appellant, brought suit against William A. Harrison, Commissioner of Insurance of the State of Texas, Jesse James, State Treasurer of the State of Texas, Will Wilson, Attorney General of Texas, and the State Board of Insurance of the State of Texas, appellees, under the provisions of Art. 1.05, Title 122A, Taxation-General, Vernon's Civil Statutes, for the refund of certain gross premium taxes assessed and collected from appellant under the provisions of Art. 4769, V.C.S., for the calendar years 1957 and 1958, which taxes were paid under protest. After trial before the Court without a jury, the Trial Court entered a "take nothing" judgment against appellant, from which judgment this appeal has been perfected.

Appellant bases its appeal upon three points of error to the effect that the Trial Court erred in holding that in computing its taxes for the years 1957 and 1958, the ratio of its "Texas securities", to its similar securities owned in the State of Nebraska for the purpose of determining the applicable tax rate under Art. 4769, V.C.S., appellant was required to include any part of its Nebraska real estate which was of such character that it would not have been included, if located in Texas, within the term "Texas securities" as that term is defined in Art. 3.34, Texas Insurance Code, V.C.S.

In its brief appellant asserts that the principal issue to be decided is the construction of the phrase "similar securities" as used in Art. 4769, V.C.S., the "gross premium" tax statute. This statute provides that the tax rate applicable each year for an insurance company not organized under the laws of Texas shall be based on the ratio of the amount the company had invested in "Texas securities" on December 31st of the preceding year to "the amount that it had invested in similar securities in the State in which it then had the highest percentage of its admitted assets invested."

The present controversy arises from different interpretations of the following portion of Art. 3.34, Insurance Code:

"The investments required by this chapter may be made by the purchase of not more than one building site, and in the erection thereon of not more than one office building, or in the purchase, at its reasonable market value, of such office building already constructed and the ground upon which the same is located in any city of the State of more than four thousand (4,000) inhabitants. * * *"

Art. 3.40, Texas Insurance Code, also provides that a life insurance company organized under the laws of Texas may secure, hold and convey "one building site and office building for its accommodation in the

transaction of its business and for lease or rental * * *."

On December 31, 1957, appellant owned and used a building site and office building in Nebraska. It also owned certain real estate in Nebraska which it has acquired for the purpose of erecting thereon an office building for its use upon completion. On December 31, 1957, the new office building was being constructed upon the property so acquired but not having been completed as of that date, it was not being utilized by appellant. The building having been completed during the year 1958, appellant moved its office into the new building which was included in its tax return for the year ending December 31, 1958. The controversy concerning the taxes which appellees assert that appellant should be required to pay are therefore confined to taxes due based upon the tax return for the year 1957, since the old office property which was then utilized by and included in the 1957 tax return of appellant was separate and distinct from the uncompleted new office building.

The specific issue involved is whether the building site which was acquired and owned by appellant during the year 1957 for the purpose of erecting an office building thereon which had not been completed for appellant's use on December 31, 1957 constituted a similar security in computing the ratio in addition to the building site and office building which appellant was using on December 31, 1957 or whether only the building site and office building which was then in use by appellant constituted a "similar security" if located in Texas. Appellant contends that since Art. 3.34 permits an insurance company organized under the laws of Texas to legally own only one building site and office building thereon, the inclusion of the building site acquired in 1957 upon which an office building was being erected but not completed for use on December 31, 1957, could not have been a legal investment in "Texas securities" since a domestic insurance company would have been prohibited from owning and hold-

ing more than one building site and building thereon under the provisions of Arts. 3.34 and 3.40 of the Insurance Code.

Appellees' position in requiring appellant to report the investment in the building site and the uncompleted office building in addition to the building site and office building then in use by appellant as a "similar security" in its 1957 tax return is based upon an Attorney General's opinion rendered to the Board of Insurance Commissioners, dated December 7, 1951, holding that the use by the Legislature of the phrase "similar securities" rather than "identical securities" implied a legislative intent to include property of a character which would not be included within the term "Texas securities" if located in Texas and if the Legislature had intended that the word "similar" should mean "identical," then it would have used the latter word, in which case the position taken by appellant would be correct.

Webster's New International Dictionary (2nd Ed.) defines "similar" as "nearly corresponding; resembling in many respects; somewhat like; having a general likeness." It is a word with different meanings depending on the context in which it is used.

Art. 3.41, Texas Insurance Code, governing authorized investments in securities or property for foreign life insurance companies reads as follows:

> "The assets of any 'foreign company' shall be invested in securities or property *of the same classes* permitted by the laws of this State as to 'domestic' companies or by other laws of this State in other securities approved by the Board of Insurance Commissioners as being *of substantially the same grade.*" (Italics supplied.)

■ Appellees contend that the use by the Legislature of the words "of the same classes" and "of substantially the same grade" in Art. 3.41 indicates a legislative intent that such words should be construed as having the same meaning as the words

"similar securities" used in Art. 4769. With this contention we are unable to agree for the reason that if the Legislature had intended that the words "similar securities" in Art. 4769, V.C.S., were to be given the same meaning as the words "of substantially the same grade" or "of the same classes" as used in Art. 3.41, Insurance Code, it would have adopted and used the same words in each article. Presumably, in the use of the different phrases or words in the two articles, the Legislature intended to differentiate between the meaning and construction of the words when used in statutes enacted for different purposes.

Art. 3.34, Insurance Code, provides that cash deposits in regularly established National or State banks or trust companies in Texas on the basis of average monthly balances throughout the calendar year constitute "Texas securities". Assuming *arguendo* that the Legislature had omitted deposits in National banks from its definition of "Texas securities", then any deposit made by appellant in a National bank in the State of Texas would not have constituted a "Texas security" for which it could receive credit under the provisions of Art. 4769, although the deposits in a National bank in the State of Nebraska would constitute admitted assets both in Nebraska and Texas "of the same classes" or "of substantially the same grade."

It has long been the practice of the various Legislatures of Texas in enacting laws taxing gross premiums received by foreign insurance companies authorized to do business in Texas to encourage investments by such companies of part of their assets in Texas by providing for reduction in the rate of tax. Board of Insurance Commissioners v. Prudential Fire Insurance Co., Tex.Civ.App., 167 S.W.2d 578, error ref. In the preceding example, a foreign life insurance company would acquire no benefit by depositing its funds in a National rather than in a State bank in Texas for in such event it could not receive the benefit of the lower tax rate provided in Art. 4769, V.C.S.

■ Without further delving into this problem in semantics, we hold that in using the words "similar securities" in Art. 4769, V.C.S., the legislative intent was to require appellant and any other foreign life insurance company required to pay gross premium taxes under the provisions of Art. 4769, V.C.S. to include in its tax return under the words "similar securities" only such property or securities owned by it in the State in which it had the highest percentage of assets invested as it would have been permitted to invest or own in "Texas securities" as defined in Art. 3.34, Insurance Code in the State of Texas.

■ Under this interpretation, since appellant would not have been permitted by the laws of Texas to own more than one building site and office building thereon in the State of Texas, it was not required to report in its tax return for the year 1957 the building site acquired by it for the erection of an office building which had not been completed on December 31, 1957 as a "similar security" and therefore was not required to pay the tax erroneously assessed against it by appellees.

Appellees urge that if the interpretation of the words "similar securities" advanced by appellant is adopted, a foreign insurance company by carefully investing in property or securities of a character different from those defined as "Texas securities" in Art. 3.34, could qualify for the minimum tax rate under Art. 4769 with only a minimum amount of its admitted assets invested in "Texas securities". This contention is purely hypothetical but if such condition were to arise, its remedy is the concern of the legislative rather than the judicial branch of the State government.

Appellees also contend that since the rendition of the Attorney General's opinion in 1951, there has been a long standing and continuous administrative or departmental construction in accordance therewith. Up-

on the trial, to support their burden of proof to establish such administrative construction, appellees offered the testimony of Miss Virginia Gardner, Tax Analyst for appellee Board of Insurance, who stated that since 1953 the Board of Insurance and its predecessors in office have "always used the market value of the total real estate held in the State in which the company had its highest admitted assets" in computing the tax rate under Item 12 of the Tax Rate Form. Item 12 of the Tax Rate Form reads as follows:

| "All real estate owned by life insurance companies in this State on December 31, 19—, all thereafter acquired by foreclosure of a lien thereon, and one home office building including building site, in a city of more than four thousand inhabitants, all to the extent of their reasonable market value. | Col. 1 Texas Securities | Col. 2 Similar Securities in State of —— |
|---|---|---|
| | —— | ——" |

Although Miss Gardner testified that she had consistently used the total real estate held in a State where the foreign company had its highest admitted assets in checking the applicable tax rate and that she could recall no occasion since 1953 in which the Department had permitted the real estate report to be treated differently, nevertheless she did not name any specific incident in which the so-called departmental interpretation had actually been applied by her until it arose in the instant case.

Mr. Paul Conner, Assistant to the Insurance Commissioner and Chief Clerk to the State Board of Insurance, testified that the Insurance Department had permitted Texas companies to list two home office sites as "Texas securities" during the interim while building or acquiring a new office building, but that the departmental practice had been to take no action against any company which owned two home office sites during the period when it was building or acquiring a new office building and still remaining in and using the old one, although admitting that such interpretation of Art. 3.40 might be questionable. The evidence offered by appellees fails to show any affirmative departmental construction in accord with the Attorney General's opinion other than as applied to appellant in the case at bar.

■ While long standing departmental construction of a statute by the officials charged with its enforcement and the opinions of the Attorney General are to be given weight in arriving at the legislative intent in the construction of a statute which is ambiguous or of doubtful meaning, nevertheless where the evidence fails to show an affirmative long standing departmental construction, or the construction of the statute by the Attorney General is in error, as here we hold it to be, we do not consider that we are bound by such departmental construction or the opinion of the Attorney General in interpreting the words "similar securities". Eddins-Walcher Butane Co. v. Calvert, 156 Tex. 587, 298 S.W.2d 93, 96.

Appellees also contend that appellant is estopped to assert that any of its Nebraska real estate is not similar to "Texas securities" under the terms of Art. 3.41, Texas Insurance Code, supra, relying upon that specie of estoppel which is based upon the acceptance and rendition by one having knowledge or notice of the facts and benefits arising from a statute which could have been rejected or contested, citing Houston Production Co. v. United States (S.D.Tex.), 4 F.Supp. 715.

Appellees admit that they do not rely upon the doctrine of equitable estoppel or estoppel in pais, but contend that since appellant has been granted a certificate of authority to do business in Texas and has permitted such certificate to continue in effect, the Insurance Department by approving such certificate has expressed its opinion that appellant's assets are invested in securities or property of the same classes permitted by the laws of Texas as to domestic companies or in other securities of substantially the same grade and therefore being so invested, they are "similar securities" as that term is used in Art. 4769.

It is admitted that appellant has filed with the Insurance Department all of the required reports and statements which list in detail all of the securities or property owned or held by appellant, including the real estate here in issue, and there is no contention by appellees that there had been any mis-statement, misrepresentation or concealment by appellant of any facts in such reports.

■ In order to claim an estoppel, a party claiming its benefit must not only be without knowledge of the true situation but the situation must be such that the party claiming the estoppel is without available means of acquiring knowledge of the truth, Hunt v. W. O. W. Life Ins. Soc., Tex.Civ.App., 153 S.W.2d 857, error ref., and if the means of ascertaining the true situation are available to such party and he fails to ascertain the true factual situation, the doctrine of estoppel cannot be relied upon even though there had been a material misrepresentation of facts. Grinnan v. Dean, 62 Tex. 218; Kelly v. Heimer, Tex.Civ.App., 312 S.W.2d 430, 434, error ref., N.R.E.

■ Mr. Paul Conner, for the Insurance Department, stated that all of the basic facts concerning the property owned by appellant, both in Texas and Nebraska, were contained in the reports of appellant filed with the Department and that based upon such reports, the Department had satisfied itself that appellant had fully complied with the law before issuing a certificate of authority under the provisions of Art. 1.14, Texas Insurance Code.

Mr. Conner testified that from such information as contained in the various reports and tax return for the year 1957 filed by appellant, the Department could have ascertained that investment in real estate would be property presumably a legal investment in the State of Nebraska but an equivalent investment in real estate could not have been acquired in Texas by a Texas company, and therefore it could have been

determined that certain of the appellant's property in Nebraska was not such as to fit the description of "Texas securities" had it been located in Texas. Appellees' defense that appellant is estopped is without merit.

All of appellant's points of error are sustained and all of appellees' counterpoints are overruled.

The judgment of the Trial Court that appellant take nothing is reversed and judgment rendered that appellant recover from appellees the sum of $10,938.96, together with interest as provided by law, and for all costs of suit.

Reversed and rendered.