The STATE of Texas et al., Appellants,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Appellee.

No. 11113.

Court of Civil Appeals of Texas.

Austin.

Oct. 30, 1963.

Rehearing Denied Nov. 20, 1963.

Waggoner Carr, Atty. Gen., H. Grady Chandler and W. E. Allen, Asst. Attys. Gen., Austin, Paul D. Connor, Asst. Commissioner of Insurance, Austin, for appellants.

Clark, Thomas, Harris, Denius & Winters, Conrad P. Werkenthin, Mary Jo Carroll, Austin, for appellee.

ARCHER, Chief Justice.

Appellee sued the State of Texas to recover an excess of occupation taxes paid by it to the State pursuant to Article 4769, Vernon's Civil Statutes of Texas, and Articles 3.34, 3.36 and 4.05, Vernon's Texas Insurance Code, for the years 1952 through 1957 and 1959.

Appellee's grounds for recovery were that these excess taxes were paid as a result of a mistake of fact on the part of Appellee in the nature of a clerical error, or in the alternative, that such excess taxes were paid under legal duress or business complusion or in a second alternative, that such excess taxes were paid as the result of a mutual mistake on the part of Appellee and the defendant Insurance Commissioner.

Trial was before the court on stipulations in the main and most of the other evidence was undisputed.

The appeal is predicated on 24 points and are to the effect that the trial court erred in not holding that the rate at which appellee's tax should have been computed for the years 1952 through 1957 was 3.3%, and for the year 1959 was 2.2%, because Article 4769, Vernon's Texas Civil Statutes, clearly prescribes such rates for taxpayers whose reports show the information on Texas securities and "similar securities" which was shown by appellee's reports; in holding that appellee was entitled to recover any money, because it voluntarily paid the taxes, and is estopped from recovering any money because of reports it filed and cannot claim such did not speak the truth; in holding that the Board of Insurance was not authorized to accept as correct the rate of tax and the amount set out in the reports made by appellee; in holding that the certifications of the Board of Insurance to the State Treasurer as taxes owing by appellee for the years in controversy was duress; in holding that such certifications was a mistake on the part of the Board of either law or of fact; in holding that Article 4.05 of the Texas Insurance Code imposed on the Board the mandatory duty to finally determine and certify an amount of taxes less than the amount reported by appellee; in holding that any officer of the State exercised any duress to cause appellee to pay any excess taxes because there is no evidence to show such duress; in holding that the Board of Insurance or any other officer of the State made a mistake of law or mistake of fact which caused appellee to pay any of the taxes because the evidence is insufficient to show such and because there is no evidence to show such; in not holding that appellee is barred from recovering any money because appellee violated its duty imposed by law to make and to file with the Board of Insurance its report correctly stating the information required and the mistake of appellee in ascertaining the amounts reported and paid as taxes was a mistake of law and not of fact; that the evidence is insufficient, and there is no evidence to show a mistake of fact; the trial court erred in not holding that appellee is barred from a recovery because the evidence shows that appellee failed to make an attempt to calculate the percentage ratio of its New York securities to its Texas securities to ascertain the taxes it owed; because appellee was grossly negligent in failing to calculate such percentage of ratio; in failing to list on the tax reports the amounts of similar securities in the state in which it had its highest percentage of admitted assets invested; in failing to use the degree of care which the law requires in the preparation of its reports, and the money sought to be recovered had been received in good faith and legally expended prior to any claim made by appellee; because there is no pre-existing law to authorize the recovery of any sum; in holding that certain securities owned by appellee were not similar securities and that such securities (The Detroit Edison Company) were not New York securities because there is no evidence to support such finding and finally the court erred in holding that the Detroit Edison Company was not doing business in New York within the purview of Article 3.34 of the Texas Insurance Code.

Appellee makes counterpoints to the effect that the action and judgment of the trial court is correct and supported by the record and the law and should be upheld, such being a general judgment and other than certain specific findings stated in the judgment itself and no findings of fact or conclusions of law were filed or requested. Appellee further contends that it pled independent alternative grounds of recovery that the court on any theory it could have followed will be applied in support of the judgment, and in support thereof cites City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038 and other cases.

The stipulations as set out were agreed to, but not exclusive and either party could introduce additional evidence that does not conflict with such stipulations.

It was stipulated that the plaintiff was a foreign corporation and obligated to pay gross premium taxes in accordance with Article 4769 and were paid on or before the 15th day of March following the tax year after being certified and the amounts were set out as follows:

"4. The amounts of gross premium taxes paid by Plaintiff to the State Treasurer on or before the 15th day of March following the tax year after being certified to the State Treasurer by the Insurance Commissioner in accordance with Article 4769, V.A.C.S., are as follows:

| Year | Amount |
|------|--------|
| 1952 | $ 80,153.94 |
| 1953 | 124,676.20 |
| 1954 | 150,473.05 |
| 1955 | 152,735.61 |
| 1956 | 190,881.87 |
| 1957 | 233,512.20 |
| 1959 | 161,180.69 |

"5. The amounts of taxes overpaid by Plaintiff for each of the above years are as follows:

| Year | Amount |
|------|--------|
| 1952 | $ 13,358.99 |
| 1953 | 20,779.36 |
| 1954 | 25,078.57 |
| 1955 | 63,639.83 |
| 1956 | 79,534.11 |
| 1957 | 97,296.74 |
| 1959 | –0– |

"Plaintiff has overpaid its taxes under Article 4769 for the above years in the total aggregate amount of $299,687.60; all subject, however, to the alternative stipulations appearing in Paragraphs 15, 16, 17 and 18, infra.

"6. The rate at which plaintiff computed its taxes under Article 4769, V.A.C.S., and the rate at which these taxes should have been computed are as follows, subject only to the alternative stipulations in Paragraphs 15, 16, 17, and 18, infra:

| Year | Tax Rate Used | Correct Tax Rate |
|------|---------------|------------------|
| 1952 | 3.3% | 2.75% |
| 1953 | 3.3 | 2.75 |
| 1954 | 3.3 | 2.75 |
| 1955 | 3.3 | 1.925 |
| 1956 | 3.3 | 1.925 |
| 1957 | 3.3 | 1.925 |
| 1959 | 2.2 | 2.2 " |

Paragraphs 15, 16, 17, and 18, referred to above, are as follows:

"15. The Detroit Edison Matter. If called to testify in this cause A. G. Maihofer of Detroit, Michigan, would state under oath as shown on Exhibit Number 1, hereto attached and made a part hereof. If this Court finds that Detroit Edison securities should be excluded from New York investments under Article 3.34, Vernon's Texas Insurance Code and similar security under Article 4769, V.A.C.S., then, in that event only, the Plaintiff overpaid its taxes by the following amounts, rather than the amounts set out in Paragraph 5 above, and the rate at which such taxes should have been calculated is as follows, rather than as set out in Paragraph 6 above:

| Year | Amount of Overpayment | Correct Tax Rate |
|------|-----------------------|------------------|
| 1952 | $ 13,358.99 | 2.75 |
| 1953 | 41,558.73 | 2.2 |
| 1954 | 50,157.69 | 2.2 |
| 1955 | 63,639.83 | 1.925 |
| 1956 | 79,534.11 | 1.925 |
| 1957 | 97,296.74 | 1.925 |
| 1959 | 20.147.58 | 1.925 |
| Total | $365,693.67 | |

"16. The Dallas Hotel Company Matter

"If this Court finds from the evidence presented at the trial that the Dallas Hotel Company se-

curities held by Plaintiff are qualified Texas securities under Article 3.34, Vernon's Texas Insurance Code, and Article 4769, V.A.C.S., then, in that event only, the Plaintiff overpaid its taxes by the following amounts, rather than the amounts set out in Paragraph 5 above, and the rate at which such taxes should have been calculated is as follows, rather than as set out in Paragraph 6 above:

| Year | Amount of Overpayment | Correct Tax Rate |
|------|-----------------------|------------------|
| 1952 | $ 26,717.98 | 2.2 |
| 1953 | 51,948.41 | 1.925 |
| 1954 | 62.697.11 | 1.925 |
| 1955 | 63,639.83 | 1.925 |
| 1956 | 79,534.11 | 1.925 |
| 1957 | 97,296.74 | 1.925 |
| 1959 | 20.147.58 | 1.925 |
| Total | $401,981.76 | |

"17. The New York Real Estate Matter

"If this Court finds that under Article 3.34 only real estate which would be a valid investment of Plaintiff in Texas under Article 3.40, Vernon's Texas Insurance Code, is a similar security in New York under Article 4769, V.A.C.S., and, therefore, a valid New York security, then in that event only the plaintiff overpaid its taxes by the following amounts, rather than the amounts set out in Paragraph 5 above, and the rate at which such taxes should have been calculated is as follows, rather than as set out in Paragraph 6 above:

| Year | Amount of Overpayment | Correct Tax Rate |
|------|-----------------------|------------------|
| 1952 | $ 26,717.98 | 2.2 |
| 1953 | 51,948.41 | 1.925 |
| 1954 | 62,697.11 | 1.925 |
| 1955 | 63,639.83 | 1.925 |
| 1956 | 79,534.11 | 1.925 |
| 1957 | 97,296.74 | 1.925 |
| 1959 | 20,147.58 | 1.925 |
| Total | $401,981.76 | |

"18. If the Court finds affirmatively to more than one of the stipulations presented in Paragraphs 15, 16, and 17, then in such event, the Plaintiff overpaid its taxes by the following amounts, rather than the amounts shown in Paragraphs 5, 15, 16, or 17:

| Year | Amount of Overpayment | Correct Tax Rate |
|------|-----------------------|------------------|
| 1952 | $ 33,397.48 | 1.925 |
| 1953 | 51,948.41 | 1.925 |
| 1954 | 62,697.11 | 1.925 |
| 1955 | 63,639.83 | 1.925 |
| 1956 | 79,534.11 | 1.925 |
| 1957 | 97,296.74 | 1.925 |
| 1959 | 20,147.58 | 1.925 |
| Total | $408,661.26" | |

Stipulation No. 7 is that the report form was furnished by the Board pursuant to Article 1.10 Insurance Code.

By Stipulation No. 8 it was agreed that upon receipt by the Board of the tax reports the Board promptly certified to the State Treasurer the amount of the taxes shown.

It was stipulated in No. 9 that no communication was received by plaintiff from the State, as to tax liability other than the report forms and by Stipulation No. 10 plaintiff made no protest to payment of the taxes or complaint until December 1960, when plaintiff notified the State that it intended to file a claim for refund of some of the taxes and the State was unaware of any overpayment until then.

In Stipulation No. 12 it was agreed that plaintiff worked with employees of the Board in an effort to discover and determine the exact amount of taxes overpaid and the Board has certified that plaintiff has overpaid its taxes by the amounts shown in paragraph 5, supra and in paragraphs 15, 16, 17 and 18, copied hereinabove.

By Stipulation No. 13 it was agreed that all of the taxes had been legally disbursed

by the State lawfully prior to the claim made by plaintiff.

We believe that the judgment of the trial court was correct and we affirm such.

There is no question but that the taxes for the years involved were overpaid by a mistake of fact in the nature of a clerical error, business compulsion and by mutual mistake.

An official of the company, vice-president and general counsel, testified as to the size and business activities of the company and had been advised that the company had less than 75 percent invested in Texas securities by some one in the collection department of the company and would not have paid the taxes if he had known the true facts; that in the fall of 1958 the true facts were ascertained and such were reflected in the return for 1958 which was filed in 1959 and taxes paid at a lesser rate than 3.3 percent.

On cross examination the witness testified that the company did not calculate the percentage of New York securities to Texas securities accurately.

Miss Virginia Gardner, tax analyst for the Board, testified that her duties were to check the taxes on the premiums that the insurance company writes in Texas as shown by a gross premium return to be filed on or before March 1st and that it is usual to file the annual return and the gross premium return at the same time and that she reviewed the returns to determine the correct tax and payments are sent to the Treasurer; that she was required to certify such to the Treasurer by the 15th of March. The witness testified that she audited the tax returns of appellee for the years 1952 through 1957 and certified to the Treasurer the amount of taxes shown and that if a lower tax rate is taken she notifies such company.

The witness testified that she wrote the following letter:

"STATE BOARD OF INSURANCE

Austin 14, Texas

April 13, 1961

Mrs. Doris Titsworth, Clerk
Claims and Accounts Committee
57 Legislature
State Capitol
Austin, Texas

Dear Mrs. Titsworth:

We have examined the annual statements of the Connecticut General Life Insurance Company and wish to advise that our records show this claim to be just and correct.

It is our recommendation that this company be reimbursed in the amount of $391,592.08 as claimed in the attached affidavit.

Very truly yours,
COMMISSIONER OF INSURANCE
By: /s/ Virginia Gardner

Virginia Gardner
Tax Analyst

VG:md
Encl."

A former Assistant Attorney General wrote the following letter:

"THE ATTORNEY GENERAL
OF TEXAS
Austin 11, Texas
May 22, 1961

Honorable Obie Jones, Chairman
House Claims and Accounts Committee
Capitol Station
Austin, Texas

Re: Claim No. H–220

Dear Mr. Jones:

The above claim involves a refund of premium taxes paid by the Connecticut General Life Insurance Company for

the years 1952–57, which overpayment resulted from a clerical error in calculating the percentage of New York securities to Texas securities owned by this company

We have always regarded overpayments in the nature of clerical errors as overpayments resulting from a mistake of fact, and as you know, it is well established that taxes erroneously paid by a mistake of fact may be legally refunded by appropriation.

If further clarification is desired, we will be happy to comply.

Very truly yours,

/s/ Morgan Nesbitt

Morgan Nesbitt
Executive Assistant

MN:me"

Ray Clark Diebel, principal examiner for the Board, testified that the witness Virginia Gardner works under his direct supervision and that he was familiar with the reports at issue and that there was nothing in the reports to cause the Board to question the correctness of them and that the remittance for each of the years in question was received prior to the certification to the Treasurer.

The witness testified that he sent an examiner to the home office of appellee to determine the accuracy of the reports, and that the company paid money as set out in the stipulation that it did not actually owe the State and testified in detail as to form and content of the annual statement prescribed by the statute by the Board.

We recognize that no employee of the State by statements can bind the State.

There can be no question but that appellee's taxes for the years in question were computed at incorrect rates, even if the reports do not show any of the ratios of Texas securities to similar securities which are called for by Article 4769.

We believe that appellants' construction of the statute has been disapproved by the Supreme Court in Metropolitan Life Insurance Company of New York v. Mann, 140 Tex. 450, 168 S.W.2d 212.

Patton v. American Home Mutual Life Insurance Company, 143 Tex. 373, 185 S.W.2d 420.

Then the stipulations of the parties as to the rate to be used in computing the taxes hereinabove set out are binding.

City of Dallas v. Texas Prudential Insurance Company, 156 Tex. 36, 291 S.W.2d 693.

■ Taxes paid which are not legally due are paid under implied duress, when the statute provides that the company shall lose its permit to do business if such tax is not paid. State v. Akin Products Company, 155 Tex. 348, 286 S.W.2d 110.

■ We do not believe that the clerical error on the part of appellee's employees in compiling its reports operate as an estoppel to present its later claim asserting claim for refund.

The elements of estoppel are not present in this case, as are set out in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, where it is held:

"On the question of estoppel we find that 'In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on

or acted on it to his prejudice.' 31 C.J.S., Estoppel, § 67, page 254."

In Guarantee Mutual Life Insurance Company v. Harrison, Tex.Civ.App., 358 S.W.2d 404, er. ref., n. r. e., this Court discussed the theory and basis of estoppel.

■ We do not believe that appellee was barred from recovery by negligence, gross negligence, or negligence per se.

There was offered no evidence as to negligence, which term is defined in Taylor v. Arlington Independent School District, 160 Tex. 617, 335 S.W.2d 371, but was a clerical or inadvertent error. 40 Am.Jur. 848, Payment, Section 194.

■ The fact that the funds have been received by the State Treasury and legally expended, does not bar the tax payer's right to refund of monies to which the State was not entitled. Austin National Bank v. Sheppard, 123 Tex. 272, 71 S.W.2d 242. Union Central Life Insurance Company v. Mann, 138 Tex. 242, 158 S.W.2d 477.

■ The State says that the action of the court in rendering judgment is unconstitutional as being in violation of Section 44 of Article III of the State Constitution, Vernon's Ann.St., because there is no pre-existing law to support any recovery.

The State has permitted this suit and the judgment is of a court of competent jurisdiction. No appropriation has been made to pay the judgment, but even in that event the defense is without merit. Austin National Bank v. Sheppard, supra.

We believe the trial court was justified in holding that the Detroit Edison security should not be classified for Texas tax purposes as "similar securities" in the State of New York, within the meaning of either Article 4769, or Article 3.34.

It was stipulated (No. 15) that appellee has invested in certain securities of the Detroit Edison Company and that, if those securities should not be classified as "Similar Securities" in the State of New York, appellee is entitled to a further reduction in tax rate than that undisputed.

It was stipulated that A. G. Maihofer of Detroit would testify briefly from the full stipulations that he was Secretary of the Detroit Edison Company and was familiar with the corporate structure, the extent of its activities in Michigan and elsewhere, and that the company is an operating utility corporation engaged primarily in the production and sale of electricity conducted entirely in Michigan.

That the company is incorporated under the laws of New York, but does no utility business in New York, manufactures or sells any goods and has no customers in the state; that the company maintains an office at which stockholders and some directors' meetings are held, and has some bank deposits with some United States Government obligations which are held by a bank; that a franchise tax of $25.00 is paid, but does not pay any business tax. Guarantee Mutual Life Insurance Company v. Harrison, Tex.Civ.App., 358 S.W.2d 404, er. ref. Merrick v. Van Santvoord, 34 N.Y. 208.

The State, through its counsel, has filed an excellent brief citing many cases, which has had our careful consideration, but we believe the judgment to be correct and just and should be affirmed.

The judgment of the trial court is affirmed.

Affirmed.