

# THE ATTORNEY GENERAL
## OF TEXAS

July 31, 1989

JIM MATTOX
ATTORNEY GENERAL

Honorable Hugh Parmer
Chairman
Committee on Intergovern-
  mental Relations
Texas State Senate
P. O. Box 12068
Austin, Texas   78711

Opinion No.  JM-1076

Re: Validity of rules issued by the Texas Board of Health to implement the Texas Abortion Facility Reporting and Licensing Act, article 4512.8, V.T.C.S. (RQ-1511)

Dear Senator Parmer:

You ask whether rules adopted by the Texas Board of Health with regard to the "construction and design" of abortion facilities exceed the rule-making authority granted to the board in article 4512.8, V.T.C.S., the Texas Abortion Facility Reporting and Licensing Act.

The Texas Abortion Facility Reporting and Licensing Act was enacted in 1985. Acts 1985, 69th Leg., ch. 931, at 3121, 3173. The Act requires that abortion facilities be licensed by the Department of Health, imposes certain reporting requirements on such facilities, authorizes the department to seek injunctions for violations of standards or licensing requirements under the Act, and provides for penalties. The rulemaking authority about which you inquire is conferred on the Board of Health in section 3 of the Act, which provides in part:

> (a) The board shall adopt rules necessary to implement this article, including requirements for the issuance, renewal, denial, suspension, and revocation of a license, to operate a facility based on the minimum standards set out below.

> (b) The board shall set minimum standards to protect the health and safety of the patient. An abortion shall be performed only by a physician as defined by the provisions of the Medical Practice Act (Article 4495b, Vernon's Texas Civil Statutes). These

standards shall be no more stringent than Medicare certification standards for:

    (1)  qualifications for professional personnel;

    (2)  qualifications for nonprofessional personnel;

    (3)  medical treatment and medical services provided by a facility and the coordination of treatment and services;

    (4)  supervision of professional and non-professional personnel;

    (5)  sanitary and hygienic conditions within the facility;

    (6)  the equipment essential to the health and welfare of the patients; and

    (7)  clinical records kept by the facility.

Relying on the provisions of section 3 of article 4512.8 as authority, the Board of Health has adopted rules regulating abortion facilities. 25 T.A.C. §§ 139.1 through 139.47. Sections 139.21 through 139.23 ("General Construction Requirements for Abortion Facilities"), sections 139.31 and 139.32 ("Requirements for Existing Abortion Facilities") and sections 139.41 through 139.47 ("Construction Requirements for New Abortion Facilities") impose various standards for the construction and design of abortion facilities, the area of regulation about which you are concerned. Also, other provisions touch on the matter of the construction and design of abortion facilities. See, e.g., id. § 139.16. Many of the rules incorporate by reference technical rules or standards, such as those of the National Fire Protection Association, the American Society for Testing and Materials, etc.

It appears from our research, and from the brief submitted by the Department of Health in connection with this request, that the resolution of the question you present turns on the interpretation of section 3 of article 4512.8. The department argues:

    All of these construction and design standards for abortion facilities insure the

.

> health and safety of patients, and, there-
> fore, fall within the standards allowed by
> the first sentence of Section 3(b) of the
> Act.

> . . . .

> It is reasonable to say that the list of
> categories in Section 3(b) of the Act is not
> meant to limit the types of minimum standards
> the board may establish to protect the health
> and safety of the patient, but only to
> itemize certain areas which the board must
> cover in its standards and which must be no
> more stringent than certain Medicare stand-
> ards. The seven categories should be read as
> an inclusive, rather than exclusive, list of
> standards.

Brief for Texas Department of Health, at 6 and 7 (Dec. 22, 1988).

From the scant legislative history on the provisions of the Texas Abortion Facility Reporting and Licensing Act[1] we find only one clear indication of the intended scope of the Board of Health's rule-making authority under section 3. The document "Conference Committee Report, H.B. 2091 En-grossed and the Senate Version of H.B. 2091" (May 27, 1985) states in part that section 3

> [a]uthorizes the board to establish minimum
> standards for facility licensure which

---

1. House Bill 2091 as originally filed did not include the provisions of the Abortion Facility Reporting and Licensing Act, nor did the committee substitute version of the bill which passed the House on May 22, 1985. The provisions of the Abortion Facility Reporting and Licensing Act were added in the Senate by floor amendment, where the bill passed, with other amendments as well, on May 26. The House refused to accept the Senate amendments and the bill was referred to conference committee where it was adopted with the Abortion Facility Reporting and Licensing provisions added by the Senate. The conference committee version was adopted by both the House and Senate on May 27, 1985.

.

concern: personal qualifications; medical treatment and services provided and the coordination of those services; personnel supervision; sanitary conditions of the facility; equipment essential for the health and welfare of patients; and clinical records.

The provisions of section 3(b), again, provide that "[t]he board shall set minimum standards to protect the health and safety of the patient. . . . These standards shall be no more stringent than Medicare certification standards for [seven listed areas which do not include the 'construction and design' of a facility]." We concede that these provisions are susceptible of two different interpretations. The Department of Health's view is that the first sentence confers general authority to set standards to protect patient health and safety and that the seven listed categories, for which "standards shall be no more stringent than Medicare certification standards," restrict the board's authority in rule-making only regarding those seven categories. The view expressed in the Conference Committee Report quoted above is that the seven listed categories constitute the exclusive areas regarding which the board may promulgate standards.

The rules in question were not adopted until 1987. The Board of Health's interpretation of the rules is thus not one of such long standing that we believe it would be accorded great weight by a court. See Guarantee Mutual Life Ins. Co. v. Harrison, 358 S.W.2d 404 (Tex. Civ. App. - Austin 1962, writ ref'd n.r.e.).

On the other hand, we believe that the interpretation of the section 3 provisions found in the Conference Committee Report quoted above is of considerable significance in determining the legislative intent in enacting these provisions. See, e.g., National Carloading Corp. v. Phoenix-El Paso Express, 178 S.W.2d 133 (Tex. Civ. App. - El Paso), aff'd 176 S.W.2d 564 (Tex. 1943), cert. denied, 322 U.S. 747 (1944).

Accordingly, we conclude that the authority in section 3 of article 4512.8 for the Board of Health to set standards for abortion facilities is limited to those areas listed in subsections (b)(1) through (b)(7), and does not include the authority to impose construction and design standards.

In support of this conclusion we note that another article of H.B. 2091 makes provisions for the licensing by the Department of Health of Ambulatory Surgical Centers. See V.T.C.S. art. 4437f-2, the Texas Ambulatory Surgical Center Licensing Act. That act also confers rule-making authority on the Board of Health vis a vis the setting of minimum standards. In this instance, however, the provisions for rule-making authority read in part:

> (b) The board shall set minimum standards for:
>
> (1) the construction and design of an ambulatory surgical center, including plumbing, heating, lighting, ventilation, and other design standards that are necessary to ensure the health and safety of patients;
>
> (2) the qualifications of the professional staff and other personnel at an ambulatory surgical center;
>
> (3) the equipment essential to the health and welfare of the patients;
>
> (4) sanitary and hygienic conditions within the ambulatory surgical center and its surroundings; and
>
> (5) a quality assurance program for patient care.
>
> (c) Standards set under this section may not exceed the minimum standards for certification under Title XVIII of the Social Security Act, as added July 30, 1965 (Pub.L.No. 89-97). (Emphasis added.)

The specific authorization in the Ambulatory Surgical Center Licensing Act for the board to set minimum standards for the "construction and design" of a facility suggests that had the legislature in the same bill intended to authorize the board to adopt construction and design standards for abortion facilities, it would have done so expressly.

We note, however, that though we find the board has no authority to impose construction and design standards on abortion facilities, some of the standards adopted under the

above referenced rules relating to construction and design may be authorized as falling within one of the areas listed in subsections (b)(1) through (b)(7) of section 3, *e.g.* "sanitary and hygienic conditions within the facility" (subsection (b)(5)), or "the equipment essential to the health and welfare of the patients" (subsection (b)(6)). We are unable, however, in the opinion process to review an extensive body of agency rules for the legal sufficiency of each item.

We also note that we do not understand you to ask about, and therefore we do not address, the effect of the provisions of section 3 of article 4512.8, which limit standards adopted by the board to being "no more stringent than Medicare certification standards." It appears that there are no "Medicare certification standards" for abortion facilities. The Department of Health has informed us in its brief that it has deemed this language to refer to Medicare Standards for ambulatory surgical centers "which appear to be the type of Medicare facility closest in nature to abortion facilities." See 42 C.F.R. 416.

## S U M M A R Y

Rules adopted by the Board of Health setting minimum standards for the construction and design of abortion facilities exceed the board's statutory authority under the Texas Abortion Facility Reporting and Licensing Act to the extent such rules are not authorized by provisions of the act authorizing the board to set minimum standards for the qualifications for professional and non-professional personnel, medical treatment and medical services, supervision of personnel, sanitary and hygienic conditions, the equipment essential to the health and welfare of the patients, and the clinical records kept by the facility.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

p. 5611

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General