Footnotes in HTML versions of opinions 
are designated by superscript “balloons” or boxes (click on either for the 
footnote text) and are not numbered. For an exact copy of the opinion, retrieve 
the Adobe PDF version.
 IN THE SUPREME COURT OF TEXAS
════════════
No. 
02-1110
════════════
Dallas County Community College District, et 
al., Petitioners,
v.
William H. Bolton II, et al., 
Respondents
════════════════════════════════════════════════════
On Petition 
for Review from the
Court of 
Appeals for the Fifth District of Texas
════════════════════════════════════════════════════
Argued on January 
7, 2004
            Justice Brister, joined by Chief Justice Jefferson and Justice O’Neill, dissenting.
            For 
the first time in more than a century, this Court says the government need not 
return illegal fees it has demanded — because all who paid them were volunteers. 
In modern times we have always held otherwise, requiring public agencies to 
reimburse taxes and fees they demanded but had no right to collect. As the 
technology fees at issue in this litigation were proper, I join the Court’s 
opinion and judgment to that extent. But as the remaining fees were not, I 
respectfully dissent.
            The 
Texas Education Code authorizes colleges to charge a student-services fee for 
nonacademic activities such as intramural athletics, lecture series, student 
publications, and student government. Tex. Educ. Code § 54.503. But the fee 
cannot be imposed, nor increased more than 10 percent, without approval by the 
student body or student government. Id. § 54.503(f). 

 The fee increase here was approved at only one of the District’s seven 
campuses; there was no evidence of approval at four others, and a jury found 
there was no approval at the remaining two. 

 This was no oversight — the District knew about the statute, tried to get 
approval, failed, imposed it anyway, and now (the Court holds) may keep the 
proceeds.
            The 
class here represents almost a quarter-of-a-million students. There was no 
evidence in the summary judgment record about their particular circumstances, 
and no reason to assume all were the same. On this record, it is impossible to 
say as a matter of law that no student should get a refund (as the Court 
does), or that every student should (as the trial court did).
            The 
Court rejects all refunds based on voluntary payment, an equitable defense 
arising from the rule that “equity will not aid a volunteer.” 

 Neither the rule nor the defense is intended to penalize the public-spirited; 
it is only those who volunteer to suffer injury that equity refuses to 
reward. 
            It 
is only against such volunteers that government entities have successfully 
invoked the voluntary-payment defense. In both Corsicana Cotton Mills v. 
Sheppard, 71 S.W.2d 247, 248 (Tex. 1934) and Houston v. Feizer, 13 
S.W. 266, 268 (Tex. 1890), the taxpayers simply volunteered to pay fees they 
mistakenly thought they owed, without any assessment or demand from the 
government.
            But 
as the Court describes in sufficient detail, we have repeatedly rejected any 
voluntary-payment defense when taxpayers were not volunteers. When a government 
demands a tax or fee, and could unilaterally assess penalties for noncompliance, 
those who comply cannot be called volunteers. For them, we have routinely 
required reimbursement of illegal taxes or fees when a government unit 
could:
•          cancel 
their right to do business, see, e.g., Crow v. City of Corpus Christi, 
209 S.W.2d 922, 924-25 (Tex. 1948) (finding fee payment involuntary as city 
ordinance allowed cancellation of taxi company’s franchise); Metro. Life Ins. 
Co. of N.Y. v. Mann, 168 S.W.2d 212, 215 (Tex. 1943) (finding tax payment 
involuntary as statute allowed cancellation of authority to do business); 
Union Cent. Life Ins. Co. v. Mann, 158 S.W.2d 477, 479 (Tex. 1941) (same); 
Nat’l Biscuit Co. v. State, 135 S.W.2d 687, 691 (Tex. 1940) (finding tax 
payments involuntary as statute provided for automatic forfeiture of right to do 
business, sue, or defend in Texas); or 
•          assess 
penalties or interest, see, e.g., Highland Church of Christ v. Powell, 
640 S.W.2d 235, 237 (Tex. 1982) (finding property tax payment involuntary as 
statute provided for penalties and interest); State v. Akin Prods. Co., 
286 S.W.2d 110, 111–12 (Tex. 1956) (same); Nat’l Biscuit Co., 135 S.W.2d 
at 691 (same). 
            We 
implied duress in all of these cases, treating each payment as involuntary 
without requiring particularized proof of interference with any individual 
taxpayer’s free will or judgment. As governments usually have coercive 
powers, they cannot generally invoke the voluntary-payment rule, or at least 
have not in recent centuries. Indeed, our cases in which they have successfully 
done so not only “extend into the nineteenth century” (as the Court says), but 
appear to be almost entirely limited to it.
            The 
Court says we have allowed governments to demand and keep illegal fees in modern 
times, citing four cases. In two (as noted above), there was no demand 
and the taxpayers were complete volunteers; one other counts only if “modern 
times” includes the presidency of Chester A. Arthur. In the last, 
Edgewood III, we took the unusual step of applying our decision 
prospectively 

 to avoid “inestimable damage” to the schoolchildren of Texas. See 
Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist., 
826 S.W.2d 489, 520-21 (Tex. 1992). Accordingly, schools were allowed to keep 
past taxes because they were legal (unaffected by a prospective ruling), 
not because they were illegal but voluntarily paid. No one 
suggests today’s decision meets the standards for prospective application; by 
suggesting instead that Edgewood III was a case of voluntary payment, the 
Court makes the same mistake Justices Doggett and Mauzy did back then. 
See id., 826 S.W.2d at 538 (Doggett, J., dissenting).
            There 
is no more evidence in this record that reimbursing students for these illegal 
fees would “disrupt government functioning” than there has been in any of our 
other recent cases involving illegal taxes and fees, including:
•          an 
$80 fire-registration fee in Lowenberg v. City of Dallas, 168 S.W.3d 800, 
800-01 (Tex. 2005) (reversing dismissal based on limitations, and remanding for 
further proceedings);
•          a 
$10 bail-bond service charge in 
Lubbock County v. Trammel's Lubbock Bail Bonds, 80 S.W.3d 580, 585-86 
(Tex. 2002) (finding fee illegal and remanding for reimbursement); 
•    a 
$71 filing fee in divorce cases in Essenburg v. Dallas County, 988 S.W.2d 
188, 189 (Tex. 1998) (reversing dismissal based on lack of jurisdiction and 
remanding for further proceedings); 

 
•          a 
$31 filing fee in In re Long, 984 S.W.2d 623, 626 (Tex. 1999) 
(affirming modified contempt order for continued collection of unauthorized 
fees); 

 and
•          an 
$18 bail-bond filing fee in Camacho v. Samaniego, 831 S.W.2d 804, 815 
(Tex. 1992) (finding fee illegal and remanding for reimbursement).
These recent cases all have 
one thing in common — there is no mention in any of them of voluntary payment as 
a defense. That governments have not even raised the voluntary-payment defense 
in any recent cases shows how far back in time the Court reaches to resurrect 
the defense today.
            While 
we have never addressed voluntary payment or implied duress in the context of 
college fees, it is hard to see why students should have less protection from 
illegal fees than bail bondsmen. The Due 
Process Clause bars a voluntary-payment defense against reimbursement of an 
illegal business tax; 

 the same Clause ought to bar the same 
defense against reimbursement of an illegal student fee. 

 
            Here, 
state law provided that students who failed to pay these fees “may be prohibited 
from registering for classes” and “may be denied credit for the work done that 
semester.” Tex. Educ. Code 
§ 54.007(d). As the students 
faced a choice between paying the illegal fees or losing one or more semesters 
of higher education, the rules of implied duress ought to apply. 
            The 
Court rejects implied duress here because students could have chosen to take 
fewer hours or enroll elsewhere. But nothing in the record establishes how many 
students could afford to prolong their higher education or enroll at other 
colleges, or how many credits or other opportunities they might lose if they 
did. More important, implied duress has never required business taxpayers to 
prove they could not pursue other occupations; these students should not have to 
do so either. 
            The 
Court also says that every student could have requested a waiver of the fees. But 
waivers were available only for “undue 
financial hardship,” and were capped at 10 percent of the student body. 
See Tex. Educ. Code § 
54.503(e). As a matter of law, at least 90 percent of the students could not 
have obtained a waiver. Further, equity would never demand that taxpayers file a 
request for exemption from an illegal fee, as “equity follows the law.” See 
Upson v. Fitzgerald, 103 S.W.2d 147, 150 (Tex. 1937).
            Although 
equity should bar summary judgment for the District, it should also bar 
summary judgment in favor of the class. See BMG Direct Mktg. v. Peake, 
___ S.W.3d ___, ___ (noting that voluntary payment and restitution are both 
equitable claims). Equity would hardly allow students to enjoy direct benefits 
from these fees, and then get their fees back too. See Feizer, 13 S.W. at 
268 (holding voluntary-payment rule barred recovery by butcher who had passed on 
illegal license fee to his customers); cf. Akin Prods., 286 S.W.2d at 112 
(requiring reimbursement as any benefits taxpayers received from illegal fee 
were indirect).
            In 
Lubbock County v. Trammel's Lubbock Bail Bonds, we held a $10 bail-bond 
fee was illegal except to the extent it paid for copies and print-outs the 
refund claimants actually received. 80 S.W.3d at 583. By comparison, in State 
v. Akin Products Co., we ordered a full refund when a citrus tax was used to 
benefit the industry generally rather than the claimant specifically. 286 S.W.2d 
at 112. Applying those same standards here, students who enjoyed expanded 
recreational or cultural offerings would not be barred from a refund by 
receiving such indirect benefits, but those who obtained free textbooks or other 
direct grants would not be entitled to a refund of what they have, in effect, 
already received. 

 
            The 
summary judgment record here does not address which students enjoyed such direct 
benefits. The class representatives claimed not to know which services they 
used, but almost all of them were involved in student governments that had 
access to these fees. We should remand and require the class to show they do not 
already hold these fees in their own hands. See Truly v. Austin, 744 
S.W.2d 934, 938 (Tex. 1988) (“[A] party seeking an equitable remedy must do 
equity and come to court with clean hands.”). 

 
            The 
Texas rule is not, and never has been, that any payment once made cannot be 
recovered. See Miga v. Jensen, 96 S.W.3d 207, 211 (Tex. 2002). When the 
District invoiced students for the increased student-services fee, those who 
dutifully paid were not volunteers. As the Court concludes otherwise, to that 
extent I respectfully dissent. 
 
 
                                                                                    ________________________________
                                                                                    Scott 
Brister
                                                                                    Justice
 
OPINION DELIVERED: December 2, 2005