**Murray BETTINGER, Plaintiff-Appellant,**

v.

**Marian BETTINGER, Defendant-Respondent.**

No. 30788.

St. Louis Court of Appeals.

Missouri.

March 20, 1962.

Motion for Rehearing or for Transfer to Supreme Court Denied April 12, 1962.

Gerald A. Rimmel, Susman, Willer, Rimmel & Elbert, St. Louis, for appellant.

Hubert I. Binowitz, Carter, Bull & Baer, St. Louis, of counsel, for respondent.

BRADY, Commissioner.

This case comes to the writer on reassignment. It was submitted during our docket for October, 1961. The parties will be referred to by their designation in the trial court. The plaintiff was granted a divorce from the defendant on March 19, 1958. The defendant did not contest the divorce action at which a stipulation covering waiver of alimony, payment of attorney's fees and other matters was filed. This stipulation also provided for the plaintiff to pay $30 a week for the support and maintenance of the minor child born of this marriage and the trial court provided for that sum in its decree.

In October of 1959 the defendant filed her motion to modify as to the amount of child support. Trial was had in June of 1960. The defendant alleged that the child was then nine and a half years of age, and that "Since the entry of said decree, the circumstances pertaining to the support, maintenance, and education of said children (sic), have materially changed in such manner and degree as to make the foregoing provisions for support unreasonable, unjust and wholly inadequate. At the same time defendant states that the net worth, income and ability of plaintiff to provide suitably for said minor child has substantially increased." She prayed for modification to provide adequate support, maintenance and education without setting out any specified amount, for allowance of her attorney's fees, and for her travel, food and accommodation incidental to her attendance at the hearing on the motion. The trial court sustained the motion to modify and entered its order modifying the decree to provide for $75 per week for child support and maintenance, and also allowed $500 to the defendant as attorney's fees and $175 as traveling expenses.

**356**

The plaintiff contends that the trial court erred in sustaining the motion to modify for the reason that the defendant failed to prove any change of condition and, in the alternative, that $75 was excessive; that the trial court erred in awarding attorney's fees and travel expenses at all and, in the alternative, that the sum awarded was excessive in each category.

The facts disclosed by the transcript are that the child, Linda Jill, was ten years old at the date of the hearing of the motion to modify and lived with her mother in New York City; that Linda Jill was a fifth grade student at Lake Grove School, a private boarding school which she had attended since she was five and a half years old; that the child is home two week-ends a month and on holidays; that the tuition cost is $1,250 for a ten-month school year plus laundry, bus fare and other incidentals of about $50 a month; and that Linda has been attending a summer camp operated by the school at a cost of $475 for the two-month term. The other testimony with regard to educational facilities was that there is a public school two blocks from the defendant's apartment and Linda Jill attended that school briefly, but the defendant found it unsatisfactory for the only stated reason that she could not afford to hire a housekeeper, the cost of one being $60 a week as wages, and $40 a week for food. In the defendant's opinion this would be necessary, as the defendant works 5 days a week, from 8:30 A.M. to 6:00 P.M., and Linda Jill would be alone each week day from 3:00 P.M. to 6:00 P.M.; and that defendant is also required to be away from the city three or four times a year for more than a day at a time. The defendant testified that she would not let her daughter walk these two blocks to public school and home again, although Linda Jill is a child of normal intelligence and in good health, stating that "No good mother would." It further appeared that the defendant's apartment is in the center of Manhattan. The further testimony by the defendant concerning educational expenses was that in September of 1960, Linda Jill would enter the 6th grade and the tuition would rise to $150 a month, but that Linda Jill had expressed some dissatisfaction with the school, and with the defendant had located the Tuxedo Park School which she desired to attend and at which the tuition will be $190 a month together with additional costs of $50 term fee and $50 to $100 for expenses; that there were other schools with higher costs than this, but this was the best school at that cost; and that this school had no summer camp connected with it so that "I will have to send her to a camp for the summer."

On this issue, the plaintiff's testimony was that about two years before the hearing he had investigated private day schools in Manhattan, and the costs were "About Seventy to Seventy-Five Dollars a month", the school hours were from 8:30 A.M. until 4:00 or 4:30 P.M., and there was a charge of $12 a month for transportation, as they "pick up and deliver the student"; that he could not remember the names of the schools; that at that time he had investigated three such schools and found practically no variance in the tuition from the first to eighth grades; that the cost included lunches; that there were no extra-curricular activities in these schools and when asked if he would like Linda Jill to participate in such activities answered that he would. While the plaintiff had testified on direct examination that these schools he investigated were private day schools, upon cross-examination when asked what type of grade schools these were, he answered, "These were regular, elementary school grades. Up until the eighth grade. * * * I am talking about a regular, public school."

The evidence upon the question of other costs for the support and maintenance of Linda Jill was, on the part of the defendant, that the apartment rent was $150 per month for a living room, two bedrooms and a kitchen; that the defendant allocated one-fourth of that to Linda Jill; that a full time housekeeper was employed on weekends and holidays when Linda Jill was at

home; that the defendant had been expending $4,300 annually for Linda Jill's schooling and other expenses, and that if she sent her to the Tuxedo Park School, this amount would rise to $4,800 a year. It appears from the interrogatories and answers thereto which were introduced into evidence that during the years of 1957, 1958 and 1959, the defendant spent approximately $3,975 annually for the support and maintenance of Linda Jill.

Upon the issue of the plaintiff's increased means, the testimony was that he was employed by the Helbros Watch Company, traveling for that company in Kansas, Nebraska, Iowa and Missouri; that in 1957, the year before the original divorce decree was granted, the plaintiff earned net commissions of $16,927.11 and actually was paid $9,400.00; in 1958 his net commissions were $20,700.41 and he was paid $20,527.11; in 1959 he earned net commissions of $33,-670.12 and was paid $27,250.00; that the balance over and above the amounts actually paid him was carried over each year and paid in eight monthly installments beginning in April of each following year. At the end of December, 1959, the last complete year before the year in which the motion to modify was heard, there was $14,120.53 due plaintiff, which the Helbros Watch Company was to pay him in eight installments in 1960 upon the condition that he did not terminate his employment with the company (and the plaintiff testified he had no intention of doing so) and that he continued to sell at a rate which would at least result in earnings equal to his drawing account. It further appears that the plaintiff received an advance drawing account of $250 per week, and he estimated his gross income before business deductions and taxes for 1960 as $27,120.53. In 1959 his traveling and business expenses were $10,113.45, and $1,000 loss carry-over deduction left him an adjusted gross income for that year of $16,136.55; on this sum he paid federal income taxes of $3,716.71 and state income taxes of $303.92 and he testified his net income for 1959 was $12,115.92. The plaintiff

testified that traveling and business expenses had increased 10% to 12% in 1960 but his volume of sales when compared to the corresponding 1959 period was down 30% and he doubted if he would equal the 1959 volume on a yearly basis, although he testified that during the first months of the year—the hearing was held in June—sales are always down and that he has always exceeded his drawing account during his employment; that even if his business dropped off 30% for the entire year it would not drop down to the 1958 level when his net commissions amounted to $20,700.41; that his entertainment expenses had sharply increased over the $1,500 he deducted for this purpose in 1959 but how much the increase would be was not given; and that his company wanted him to buy a Cadillac and he had done so with a resulting rise in automobile expense since 95% of his travel time was by automobile, but how much greater his expenses from this source would be was not stated, and in any event 80% of automobile expenses are deducted as business expense on his income tax return.

At the time of trial, plaintiff had $397 in his checking account, $568.78 in a savings account, his automobile which had cost him $6,400, and the balance due him by Helbros Watch Company as of December 31, 1959 of $14,120.53 which would be paid him in eight monthly installments subject to the conditions before stated. The transcript discloses that he owed $180 in payroll taxes arising out of an unsuccessful business venture in New York, hospital bills in the amount of $383.14, doctor bill in the amount of $82, $1,900 in personal loans, $236 for his automobile insurance, current bills in the sum of $300, and attorney's fees due the defendant's attorney for allowance in the original divorce action in the amount of $350. The plaintiff's rent was $235 per month, his expenses for meals while at home averaged $35 to $40 per week. His fixed expenses consisted of the $30 per week he was paying under the original decree for the support and maintenance of Linda Jill, and $25 a week alimony he was paying to

his second wife, and $3 to $4 per month for medicines for his heart condition. It further appeared that the plaintiff saw the doctor approximately five or six times the preceding year and that these visits cost "Five Dollars, or Fifteen Dollars for a complete examination" although the total amount of medical expense for the preceding year was not stated, and neither were other living expenses such as laundry and dry cleaning which he testified were necessary.

The plaintiff's assets at the date of the hearing were $965.78 in the bank in checking and savings accounts, and a 1960 automobile which cost $6,400 at purchase. Against this, his debts were then approximately $3,431.14.

With respect to the issue of the allowance to the defendant of $175 for travel expenses and $500 for attorney's fees, the transcript discloses that defendant had worked in New York City as a fashion co-ordinator for the last eight years at a net take-home pay of $120 to $125 per week, and an average annual income of $7,800 to $8,000; that in 1959 her adjusted gross income was $7,950, on which she paid income tax of $707.70; and that at time of trial she had a balance in the bank of $100 and she had no other funds to pay her attorney's fees or expenses in connection with the hearing. Defendant testified she flew to St. Louis from New York for the hearing at a round-trip cost of $133, that her hotel bill will be $24, and her meals would be from $10 to $15. The transcript further discloses that the defendant's attorney testified that he had represented the defendant since June of 1959, and that in performance of legal services for her, his research and other work had comprised 33¼ hours, exclusive of time spent in actual trial of the motion to modify. He estimated the reasonable value of his services would be $1,500. On cross-examination the attorney testified he had spent two and a half hours on research, one and a half hours examining court files, and ten hours entirely on correspondence; that he estimated the value of his services on the basis of approximately $35 per hour but ad-

mitted that this was not his standard charge, which he testified would be $30 per hour. The defendant's attorney further stated there was nothing unusual about this particular case.

It would serve no useful purpose to add to the already large body of case law on the points by here repeating the rules of appellate review for cases such as this. They are too well known, and the same is true of the defendant's burden on the motion to modify. We think the evidence shows that the defendant met her burden of showing changed circumstances. In reaching that conclusion, we are not relying upon any one fact but rather upon the overall picture of change in the needs of the child and in the income of the plaintiff. Among the facts to be considered in the issue of the child's changed circumstances is the increase in school tuition. We cannot agree with plaintiff that defendant is unreasonable to arrange a private school education for Linda Jill. The evidence is that the girl would be alone for a period of time each day if she went to public school, would have to walk to and from public school in the middle of Manhattan, and the defendant would have to hire a housekeeper for those occasions when she was required by her work to be out of town. While alone each of these things might not justify a private school, when added together and considered with the increase in her father's income, we cannot say that the defendant, the custodial parent, was so unreasonable in arranging for private school education as to require our intervention. The same is true of the change in schools. Accordingly, there is proof that school fees will change from $1,250 each year to about $1,900 a year plus some additional expense not specifically stated for a different summer camp and certain other school fees.

While increase in the plaintiff's income and earning capacity alone will not necessarily justify an increase, such factors are important elements to be considered in equitably balancing needs with income and station in life. Adkins v. Adkins, Mo.App.,

325 S.W.2d 364 at loc. cit. [8], page 367. The pattern of the plaintiff's earning power is one of steadily increasing growth. Moreover, his gross income in the year before the original award was made was $16,927.11, while in the last complete year before the hearing on the motion it had increased to $33,670.12. It is unnecessary to go into the somewhat complicated picture of plaintiff's deductions, except to point out that plaintiff has always been successful in selling more than his drawing account in the past, and that while he testified business was down from the previous year for the period prior to the hearing, he also testified that business was always down for this period of the year and that even if his business was off 30% for the entire year, his net commissions would not drop down to the 1958 figure of $20,700.41. He testified that his traveling and business expenses had increased 10% to 12% in 1960 over 1959, when these expenses were $10,113.45 plus $1,000 for a possible loss carry-over deduction. This amounts to $1,333.61 additional expense $11,113.45 at 12%) at his highest figures. Accordingly, the evidence is that plaintiff's income could reasonably be expected to be $19,366.39 or above. This is a substantial increase over his income when the original award was made. The plaintiff urges that we can only consider his actual drawing account of $250 per week to determine income. No cases are cited for such a limitation of our consideration of the plaintiff's financial status, and we know of none. Not only was the trial court entitled to consider the net commission figure, but was also entitled to take into account the fact that the plaintiff had $14,120.53 which would be paid to him in eight installments during the year in which the hearing was held. His past record with his employer entitled the trial court to reasonably infer that the conditions upon which these payments were dependent would be met. In any event if this inference be disproved by the facts, the plaintiff has a ready remedy. It follows that in the last full year before this hearing, the plaintiff at the figures most favorable to him had a net income after

taxes of $12,115.92, plus $173.30 paid him in that year that he did not get in 1958 for a total of $12,289.22, or approximately $1,020 a month. For 1960 his gross income before taxes can reasonably be expected not to be below the 1958 figure of $20,700 plus $14,120.53, or $34,820.53 less $12,447.06 expenses (1959 expenses plus 12% increase) or $22,373.47, or approximately $1,864.45 a month.

We hold that the increased expense of the child, caused in the main by additional educational expenses, together with the substantial increase in the plaintiff's income, constitute sufficient change of condition so that it cannot be said that the trial court abused its discretion in decreeing modification. That is the extent of our review of these matters. Bradshaw v. Bradshaw, Mo. App., 317 S.W.2d 21, at loc. cit. [3] page 22; Hawkins v. Hawkins, Mo.App., 250 S. W.2d 817, at loc. cit. [3] page 819.

In considering the amount of the modification, the transcript discloses the plaintiff's fixed expenses were $160 a month for meals, at $40 per week for four weeks, although the greater part of this was written off as a part of business expenses, and the same is true of the additional expenses he claims due to the bigger automobile. The amount of this increased item was never given nor was there even any estimate as to his laundry, dry cleaning, and other such expenses. His apartment rent was $235 monthly, or $2,820 annually, but $550 of this figure was written off as a business expense. Even allowing plaintiff the full amount of his food expense at the highest estimate, $160 monthly, and charging none off to business expense; the apartment rental not charged off, $2270 yearly, or $189 monthly, $4 a month for medicine, $100 monthly alimony to his second wife; six visits to the doctor at $15 each, for $90 total, or $7.50 monthly; the plaintiff's total monthly expenses were at the very most $460.50 plus some allowance, the amount of which cannot be gleaned from this transcript, for laundry, dry cleaning and other

**360**

similar expenses. Actually the amount would be much less because the meal expense would be written off as a deduction for the time plaintiff was traveling. He would have $1,403.95 monthly remaining from which to pay his daughter's support, taxes, and other items, the cost of which was not given. The uncontradicted evidence is that the defendant spent more on this child in 1957, 1958, and 1959 than the increased award of $75 weekly, or $3,600 yearly, and that with the increased educational expenses will exceed that sum even more. This income figure is before taxes, it is true, but even when the trial court took that element into consideration the balance would not, in our opinion, constitute an amount so low that the trial court's action can be said to be an abuse of discretion.

■■ It is the plaintiff's contention that travel expense and attorney's fees should not have been awarded at all, and that in the alternative, the sum awarded was excessive in each category. It is well settled that a motion to modify is a continuation of the original action for divorce, Crooks v. Crooks, Mo.App., 197 S.W.2d 678, and the allowance of attorney's fees, Hawkins v. Hawkins, Mo.App., 250 S.W.2d 817 at [6–8] page 819, and other such awards lie within the exercise of the trial court's sound discretion which will not be disturbed in the absence of clear abuse thereof, Missouri Digest, Divorce, 312½. In 1959, the last complete year before the hearing on this motion, defendant was paid $7,950 and paid an income tax of $707.70, for a net of $7,243.30. She had expended $3,975 for maintenance of Linda Jill during that year and by simple arithmetic $2,475 of this sum had to come from her own funds. She had very little money in the bank—not even enough to pay the cost of tickets to and from St. Louis. The defendant is not required to render herself penniless before she is entitled to an allowance for her travel expenses and attorney's fees, but rather is she entitled to such awards in the discretion of the trial court upon taking into consideration her financial status and ability to bear this expense, along with that of her husband.

Upon careful review of the evidence on these matters, we are convinced there has not been abuse of judicial discretion in making these awards.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

ANDERSON, P. J. and JOHN J. KELLY, Special Judge, concur.

WOLFE and RUDDY, JJ., not participating.