Lula L. HERHALSER, Plaintiff-Respondent,

v.

Martin S. HERHALSER, Defendant-Appellant.

No. 8490.

Springfield Court of Appeals.

Missouri.

March 11, 1966.

Wear, Wear & Coffman, William A. Wear, Paul R. Coffman, Springfield, for defendant-appellant.

Lincoln, Haseltine, Forehand & Springer, Edmund C. Forehand, Dale L. Rollings, Springfield, for plaintiff-respondent.

STONE, Presiding Judge.

This action, docketed as *No. 43794* in the Circuit Court of Greene County, was instituted on February 25, 1963, by plaintiff Lula L. Herhalser for specific performance of the property settlement contract executed by her and by her husband, defendant Martin S. Herhalser, on April 26, 1962, the same date on which the Circuit Court of Greene County in a suit for separate maintenance brought by Mrs. Herhalser, as plaintiff, and docketed as *No. 41889*, entered a decree which ordered defendant to pay to plaintiff $175 per month for her support and maintenance. On March 7, 1963, defendant filed in No. 43794 his answer and also his counterclaim for reformation of the property settlement contract. Following the taking of evidence on April 1, 1965, the court entered its judgment and decree in No. 43794 on May 4, 1965, finding all issues for plaintiff both on her petition and on defendant's counterclaim and awarding plaintiff an attorney's fee of $150. On this appeal by defendant, he complains about denial of his counterclaim for reformation and about the allowance of an attorney's fee to plaintiff.

For some twenty years prior to institution of No. 41889, the suit for separate maintenance, plaintiff had lived in Pasadena, California, and defendant had lived in Springfield, Missouri. Plaintiff said that "we [apparently referring to herself and a daughter] were sent to California." Whatever the reason (here neither disclosed nor important), the parties had lived separate and apart most of the time, with defendant making trips to California "twice a year." In 1947 or 1948, defendant built a house "up in the mountains near Lake Arrowhead" in San Bernardino County, California. When the Lake Arrowhead real estate was sold in 1958, the purchasers executed a note (hereinafter referred to as the note) dated October 28, 1958, to the order of "M. S. Herhalser and Lula L. Herhalser, husband and wife as joint tenants," in the principal sum of $7,000 with interest from date, payable in monthly installments of $50 each beginning on January 1, 1959, and secured by a deed of trust on the real estate sold. For the purpose of collection, the note was left with the Bank of America, Lake Arrowhead branch, and the monthly installments, as paid from time to time, were deposited by the bank in "a joint bank account" in the names of both plaintiff and defendant. Defendant "often" made withdrawals from that account. Plaintiff knew that the monthly installments on the note were being deposited in the joint bank account, but there was no evidence that she had made any withdrawals therefrom prior to entry of the decree in No. 41889.

Shortly before the filing of No. 41889, plaintiff, then seventy years of age, came to Springfield, Missouri, and first talked with defendant's attorney, whom she knew. Finding that he was in no position to counsel with her, she then employed the firm still representing her. After "numerous" conferences between the attorneys for the parties, a written property settlement contract was drafted by defendant's attorney and subsequently was executed by both parties on April 26, 1962. That contract provided in *Paragraph 1* that, if the court found for plaintiff in No. 41889, the suit for separate maintenance, judgment for plaintiff in the sum of $175 per month might be entered (as we have noted, such judgment was entered on April 26, 1962);

in *Paragraph 2* that "Husband [defendant] agrees to convey all of his right, title and interest to his Wife [plaintiff] in and to the property now owned by the parties hereto in the State of California, together with all personal property located in the State of California"; in *Paragraph 3* that "Wife agrees to convey to Husband any and all interest she might have in and to the real estate and personal property owned by the parties hereto, located in the State of Missouri"; in the *next paragraph,* also numbered as Paragraph 3, that "Wife further agrees to execute and deliver to Husband an irrevocable power of attorney . . . to execute and deliver for her and in her name any and all deeds of trust, warranty or quit claim deeds to any and all property located in the State of Missouri"; and in *Paragraph 4* that "Husband agrees to execute and deliver to Wife an irrevocable power of attorney . . . to execute and deliver for him and in his name any and all deeds of trust, warranty or quit claim deeds to any and all property located in the State of California."

On the date of the contract, to wit, on April 26, 1962, plaintiff gave defendant a power of attorney authorizing him to execute on her behalf "any instruments of conveyance, bills of sale, mortgages and deeds of trust upon real estate and personal property located in the State of Missouri," and defendant executed a power of attorney authorizing plaintiff to sell and convey on his behalf the real estate in Pasadena, California, where plaintiff resided.

In November 1962, plaintiff drew $800 out of the joint bank account in the Bank of America, Lake Arrowhead branch, in which the $50 installments on the note were being deposited. After he learned of this withdrawal, defendant withheld from the payments of $175 per month for which he was obligated by the judgment in No. 41889, the suit for separate maintenance, sums aggregating $1,496.10 as of April 1, 1965, the date on which this action, No. 43794, was tried. In the course of trial, defendant claimed certain credits, none of

which were allowed by the trial court, against the aggregate arrearage of $1,496.-10; but, since the claim for those credits has not been pursued on this appeal, we do not detail or discuss them.

■ Counsel for both parties tried the case in the circuit court, and have briefed it on appeal, on the theory that the joint bank account in the Bank of America, Lake Arrowhead branch, and the note held by the bank for collection, are "personal property located in the State of California" within the contemplation and meaning of that language in Paragraph 2 of the property settlement contract. Accordingly, our appellate review is on the same theory. Olsten v. Susman, Mo., 362 S.W.2d 612, 614(3); Voelker v. St. Louis Mercantile Library Ass'n., Mo., 359 S.W.2d 689, 693 (2); Welch v. McNeely, Mo., 269 S.W. 2d 871, 875(2); Moore v. State Farm Mut. Auto. Ins. Co., Mo.App., 381 S.W.2d 161, 166(6); Griffin v. Anderson, Mo.App., 369 S.W.2d 889, 892(7).

However, defendant insists that the trial court erred in denying his counterclaim for reformation of the property settlement contract "because of the mutual mistake of the parties and the error of the scrivener," defendant's attorney. At one point in defendant's brief, the supporting argument runs along the line that, since none of the attorneys had been informed of, or had any knowledge concerning, the note or joint bank account prior to execution of the contract on April 26, 1962, the note and bank account could not have been considered by opposing counsel in their negotiations or by defendant's attorney in the drafting of the contract and that this was "obviously a mutual mistake"; and, at another point in the brief, the reasoning is that "the specific wording of the property settlement [contract] was the error of the scrivener, defendant's attorney, in that he was trying to avoid listing specific personal property" and that "this resulted from the mutual mistake of the parties in that neither intended that such property would become that of the plaintiff and

the scrivener had no knowledge that this property existed."

The negotiating attorneys for both parties frankly stated upon trial of this action, No. 43794, that neither of them had heard of the note or joint bank account when the property settlement contract was executed and judgment was entered in No. 41889 on April 26, 1962. And defendant's attorney testified that he had employed the hereinbefore-quoted language in paragraphs 2 and 3 of the contract to avoid listing "all of the household furniture, the automobile and other property located in [plaintiff's] home in Pasadena" and "all of [defendant's] plumbing fixtures and supplies" in his place of business and the personalty in some furnished apartments in Springfield. But, as plaintiff's attorney emphasized in his testimony, the property settlement was made on the basis of a geographical division of assets, i. e., that "he [defendant] would accept everything in Missouri and she [plaintiff] would accept everything in California, and that would be it"—"they would divide it, [one] was to have what was in one state and the other in the other state."

The record by no means compels the conclusion urged in defendant's brief that neither of the parties intended that, under the contract, the note and joint bank account would become plaintiff's property. *Plaintiff* testified without objection that, when the contract was executed, she had knowledge of the note and bank account and that it was her "understanding" that those assets were to become her sole property. Other testimony by plaintiff, here emphasized by defendant's counsel, did not require rejection of the foregoing statement as to her "understanding." For example, the fact that plaintiff did not draw on the joint bank account until November 1962, some seven months after execution of the contract, should be considered in connection with her explanation that she "left it [the bank account] there as a sort of reserve" and withdrew $800 in November 1962 "because I wanted to make im-

provements on the home—I was going to put it up for sale," leaving the balance in the account "for emergency." And, bearing in mind that plaintiff was a woman seventy years of age and unlettered in the law, her uncertain "I guess so" in response to the amorphous interrogation by the aggressive cross-examiner, "Mr. Herhalser had the right to draw it all out at the time of the emergency, didn't he," does not have the damning force and effect which defendant's counsel would accord to it.

■ Invited by his attorney to reveal "what did you consider in your own mind" in arriving at the figure of $175 per month to be paid for plaintiff's separate maintenance, *defendant* stated that he had "planned on" using the $50 monthly payments on the note and "then the balance would have to come through [my] business." At another point in his direct examination, defendant agreed that it was not his intention "to transfer interest" in the note to plaintiff (excepting that "in case of death, it would go to her") and then added "that money belonged to my business." But defendant was and is in no position to rely upon any such undisclosed plan, secret intention, or unilateral determination of ownership of the note and joint bank account. For, the property settlement contract, in no respect alleged to have been uncertain or ambiguous, was short in length and simple in terms. Defendant was a literate, successful businessman. He either read the contract, or had ample opportunity to do so, before he signed it, and there is no suggestion that his execution thereof was procured by fraud, deceit or artifice.

■ In the circumstances of the case at bar, defendant was bound in law to have known the contents of the contract, regardless of whether he read it [Porter v. Farm Bureau Life Ins. Co., Mo.App., 322 S.W.2d 927, 929; Minich v. M. F. A. Mutual Ins. Co., Mo.App., 325 S.W.2d 56, 58 (5); Haman v. Pyramid Life Ins. Co., Mo.App., 347 S.W.2d 449, 454], and he will not be permitted to rely upon or take ad-

vantage of his own fault or carelessness and be heard to say that the instrument did not express the true agreement. Ely v. Sutton, 177 Mo.App. 546, 553, 162 S.W. 755, 757(1); Reddick v. Union Electric Light & Power Co., 210 Mo.App. 260, 272, 243 S.W. 382, 385(2); Edmund S. Mills Corp. v. Stinebaker, Mo.App., 67 S.W.2d 821, 822(1). See Ragan v. Schreffler, Mo., 306 S.W.2d 494, 499(11). Although the law affords to everyone reasonable protection against fraud, "it is not an indulgent guardian which can go to the romantic length of giving protection against the consequences of indolence, folly or careless indifference to the ordinary and accessible means of information." Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658, 663(7); Hutchinson v. Metropolitan Life Ins. Co., Mo., 293 S.W.2d 307, 313; Woolfolk v. Jack Kennedy Chevrolet Co., Mo. App., 296 S.W.2d 511, 515(5,6). See Local Finance Co. v. Charlton, Mo.App., 289 S. W.2d 157, 163(11); O'Shea v. Lehr, 182 Mo.App. 676, 690–691, 165 S.W. 837, 841(1).

██ True, *defendant's attorney* had never heard of the note and joint bank account when he drafted the property settlement contract, but the significant fact is that, when the contract was executed, *both parties* knew of those assets and their situs in California. The contract was one between plaintiff and defendant, not between their attorneys; and the meaningful circumstance was the knowledge of the parties at the time of execution, rather than the want of information on the part of their attorneys. Equity will entertain a bill to reform a contract only if the mistake is mutual, i. e., if the contract has been written "in terms which violate the understanding of both parties" [Wilhite v. Wilhite, 284 Mo. 387, 393–394, 224 S.W. 448, 449(2); Baumhoff v. Lochhaas, Mo., 253 S.W. 762, 764 (1)] or, otherwise stated, if it appears "'that both have done what neither intended.'" Allan v. Allan, Mo., 364 S.W.2d 578, 581; State ex rel. State Highway Com'n. v. Schwabe, Mo., 335 S.W.2d 15, 19; Walters v. Tucker, Mo., 308 S.W.2d 673, 675.

Certainly, the trial court reasonably could have found that there was no such mistake as to the terms of the property settlement contract under review.

██ Furthermore, "[a] mutual mistake in a written instrument presupposes a prior or preceding agreement between the parties. To show the mutual mistake in the written instrument, the preceding agreement must ex necessitate be shown." Dougherty v. Dougherty, 204 Mo. 228, 237, 102 S.W. 1099, 1101(3); Crouch v. Thompson, 254 Mo. 477, 488, 162 S.W. 149, 152; Feeler v. Gholson, Mo., 71 S.W.2d 727, 729(4). See Allan v. Allan, supra, 364 S.W.2d at 581 (2); Zahner v. Klump, Mo., 292 S.W.2d 585, 587(2). The transcript on appeal reflects no such "prior or preceding agreement between the parties," in any wise differing from that set forth in the property settlement contract. For that matter, the transcript and defendant's brief leave us uncertain as to what reformation is sought.

The prayer of defendant's counterclaim was that the contract "be reformed so that paragraph 2 thereof does not include the note secured by the deed of trust on the real estate in California and . . . that the income from said note shall be decreed to be that of the defendant or that the amount of such income shall be credited upon the $175 per month that defendant has agreed to pay plaintiff for her separate maintenance and support." And upon trial defendant insisted that the note and its proceeds as deposited in the joint bank account "belonged to my business" and that "no one could draw on that account but me." In short, defendant's position in the trial court clearly was that the note and the joint bank account were his *sole* property. But upon appeal, defendant's counsel, in keeping with the ancient proverb that "better is halfe a lofe than no bread" at all [John Heywoodes Woorkes (Sharman's Ed. of 1874, a reprint of 1598), Part I, Chap. X], boldly declare that "the only logical conclusion that the trial court could have made, and this court can make, is that it [the property under discussion] was not considered

at any time and should remain just as it was before the property settlement, giving to both the plaintiff and defendant *an undivided one-half* [interest] in and to said note, deed of trust and bank account."

" 'The high remedy of reformation is never granted on a probability, or on a mere preponderance of evidence. The strict requirements relate not only to the mistake and the mutuality thereof or to the fraud alleged, but also to the real agreement which is alleged to have been made.' " Dutton v. Prudential Ins. Co. of America, 238 Mo.App. 1058, 1068, 193 S.W.2d 938, 943(5); 45 Am.Jur., Reformation of Instruments, § 116, p. 651. See City of Warsaw v. Swearngin, Mo., 295 S.W.2d 174, 181(7); Zahner v. Klump, supra, 292 S.W. 2d at 587(3); General Refractories Co. v. Sebek, 328 Mo. 1143, 1154, 44 S.W.2d 60, 65(4); Employers' Indemnity Corp. v. Garrett, 327 Mo. 874, 886, 38 S.W.2d 1049, 1054–1055(10, 11); Dildine v. Rimpson, Mo. App., 240 S.W.2d 214, 219–220.

■ Bearing in mind the injunction by both rule and statute that, upon this appellate review of a court-tried case, "[t]he judgment shall not be set aside unless clearly erroneous" [V.A.M.R. Rule 73.01 (d); V.A.M.S. § 510.310(4)], we have no hesitancy in concluding that the judgment finding the issues in favor of plaintiff on defendant's counterclaim for reformation should be affirmed.

We turn to defendant's complaint that the trial court erred in awarding plaintiff an attorney's fee of $150. In seeking to sustain this award, plaintiff's attorneys quote our statement in Patterson v. Patterson, Mo.App., 215 S.W.2d 761, 767(9), adopted from Baer v. Baer, Mo.App., 51 S.W.2d 873, 880(13), that " '[a]llowances for counsel fees and suit money for the wife in a divorce action, *and in proceedings ancillary thereto,* are largely discretionary with the trial court . . .' " (emphasis added in defendant's brief), remind us that "awards of attorneys' fees for such ancillary proceedings as motions to modify have been consistently upheld" (citing Bet-

tinger v. Bettinger, Mo.App., 355 S.W.2d 354, 360; Long v. Long, Mo.App., 357 S.W. 2d 243, 246; Crooks v. Crooks, Mo.App., 197 S.W.2d 678, 685), point out cases approving allowances to wives who, in good faith, have appealed from adverse decrees in divorce suits (e. g., Price v. Price, Mo. App., 281 S.W.2d 307, 313–314; Hall v. Hall, Mo.App., 179 S.W. 738; Libbe v. Libbe, 166 Mo.App. 240, 148 S.W. 460), and then inform us that they (counsel) find it "hard to conceive of the present case as anything but ancillary to a divorce or separate maintenance proceeding in the same nature as motion to modify or an appeal." We find it equally difficult to accept plaintiff's conception of the present case as an ancillary proceeding.

■ "Ancillary," as used in law, is defined as "designating or pertaining to a document, proceeding, officer or office, etc., that is subordinate to, or in aid of, another primary or principal one; as, an *ancillary* attachment, bill, or suit presupposes the existence of another principal proceeding . . . ." Webster's New International Dictionary, 2nd Ed., p. 98. And an "ancillary proceeding" is one subordinate to or in aid of another primary action. Schram v. Roney, D.C.Mich., 30 F.Supp. 458, 461; Black's Law Dictionary, 4th Ed., p. 112. The approved allowances to the wife in all of the cases cited by plaintiff were made in connection with appeals from decrees granting or denying divorces or in connection with motions to modify divorce decrees. Of course, an appeal is but a continuation of the original jurisdiction and suit; and, insofar as the allowance of attorneys' fees is concerned, a motion to modify the provisions of a divorce decree with respect to alimony, child support or child custody is similarly regarded. Bettinger, supra, 355 S.W.2d at 360(4); Fox v. Fox, Mo.App., 312 S.W.2d 362, 363(3); Crooks, supra, 197 S.W.2d at 685(17); Haagen v. Haagen, Mo.App., 11 S.W.2d 757, 758(2). So, the proceedings in all of the cases cited by instant plaintiff truly were ancillary in that they presupposed the

existence of, and depended upon, a primary or principal action.

This action, No. 43794, was instituted by the filing of plaintiff's "Petition for Specific Performance" of paragraph 2 of the property settlement contract, by which defendant covenanted to convey to plaintiff "all of his right, title and interest . . . in and to the property now owned by the parties hereto in the State of California, together with all personal property located in the State of California." The prayer of plaintiff's petition was "for judgment directing defendant to execute and deliver to plaintiff a written assignment of the deed of trust securing [the] note, and a letter instructing the Bank of America to change [the joint bank account] by making said account subject to the withdrawal of plaintiff alone, and further directing defendant to endorse" and deliver to plaintiff a $50 draft payable to the joint order of both parties which constituted the proceeds of one monthly payment on the note. The only averments in plaintiff's petition concerning No. 41889, the suit for separate maintenance, or the decree entered therein, were to the effect that plaintiff had instituted that suit on March 8, 1962, and that on April 26, 1962, the circuit court had rendered judgment therein which "(1) granted plaintiff the right to live separate and apart from defendant, (2) ordered defendant to pay plaintiff $175 per month for plaintiff's support and maintenance . . . and (3) taxed all costs of the proceeding against defendant." Although plaintiff's post-trial motion for "a temporary attorney fee" in this action, No. 43794, included a statement that the property settlement contract was "incorporated in a judgment for separate maintenance" in No. 41889, that motion did not prove itself [Baker v. Baker, Mo.App., 274 S.W.2d 322, 324(4); Bullock v. B. R. Electric Supply Co., 227 Mo.App. 1010, 60 S.W.2d 733, 735(6); Orlando v. Surwald, Mo.App., 47 S.W.2d 228, 229(5)], the decree now under review did not even refer to the decree in No. 41889, and that

decree is not included in the transcript on appeal.

But, whether or not the property settlement contract was approved by the court in No. 41889, the suit for separate maintenance, is here neither material nor important. For, whether or not so approved, the contract would have been valid and enforceable in this action. Gaede v. Smith, 354 Mo. 738, 741, 190 S.W.2d 931, 932(3); State ex rel. Green v. James, 355 Mo. 223, 231, 195 S.W.2d 669, 673(10, 12); Farrow v. Farrow, Mo., 277 S.W.2d 532; Singer v. Singer, Mo.App., 390 S.W.2d 605, 608(4); Dorsett v. Dorsett, 232 Mo.App. 126, 136–137, 90 S.W.2d 188, 194. Accordingly, this action neither presupposed the existence of, nor depended upon, the suit for separate maintenance as a primary or principal action and may not properly be treated as ancillary thereto.

We may say, as did the Court of Appeals of New York in Johnson v. Johnson, 206 N.Y. 561, 100 N.E. 408, 410(3), an equitable action by the wife to set aside certain provisions of a separation agreement, that we are "not aware of any influential authority for the proposition that in an ordinary equity suit between wife and husband affecting property rights counsel fees should be allowed to the former . . . .." See Low v. Low, 255 Ala. 536, 52 So.2d 218, 222(14, 15). In fine, nothing appears to take this case without the general rule that an attorney's fee may not be allowed to a party litigant in the absence of statutory authority or contractual provision therefor (as in a note). Munday v. Thielecke, Mo., 290 S.W.2d 88, 93(6); Willis v. American National Life Ins. Co., Mo.App., 287 S.W.2d 98, 107(16).

Paragraph 4 of the final decree in this action, No. 43794, being that portion of the decree awarding plaintiff an attorney's fee of $150, is set aside and for naught held; and, as thus modified, the decree otherwise is affirmed.

RUARK and HOGAN, JJ., concur.