

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

September 18, 2006

The Honorable Geraldine "Tincy" Miller
Chair, State Board of Education
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0456

Re: Whether the State Board of Education may adopt a rule requiring school textbooks to meet general textbook content standards as a condition of the Board's approval; reconsidering Attorney General Opinion DM-424 (1996) (RQ-0430-GA)

Dear Ms. Miller:

On behalf of Terri Leo, a member of the State Board of Education (the "Board"), you ask whether the Board may adopt a rule requiring school textbooks to meet general textbook content standards as a condition of the Board's approval.[1] You also ask whether the Board has authority to adopt or reject ancillary materials publishers provide at no additional cost to school districts that purchase the publishers' textbooks. *See* Request Letter, *supra* note 1, at 1. This office considered both of these issues in Attorney General Opinion DM-424 and concluded that (1) the Board has no authority to adopt rules establishing content criteria for textbook approval beyond that contained in the Education Code and (2) the Board lacks authority to consider ancillary items. *See* Tex. Att'y Gen. Op. No. DM-424 (1996) at 7–8. You ask us to reevaluate that opinion. *See* Request Letter, *supra* note 1, at 1.

## I. First Issue: Whether the Board may adopt a rule requiring textbooks to meet general textbook content standards as a condition of Board approval

### A. Statutory background

The Board "may perform . . . those duties relating to school districts" that the Texas Constitution or the Texas Education Code assigns to the Board. TEX. EDUC. CODE ANN. § 7.102(a) (Vernon 2006). Among the powers and duties section 7.102 of the Education Code assigns, the

---

[1]*See* Letter from Honorable Geraldine "Tincy" Miller, Chair, State Board of Education, to Honorable Greg Abbott, Attorney General of Texas (Jan. 6, 2006) (on file with the Opinion Committee, *also available at* http://www.oag .state.tx.us); Letter from Terri Leo, State Board of Education, District 6, to Honorable Greg Abbott, Attorney General of Texas (undated) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

Board is responsible for establishing curriculum requirements; adopting rules to carry out the curriculum required or authorized under section 28.002; and adopting and purchasing or licensing textbooks "as provided by [Education Code] Chapter 31 and adopt[ing] rules required by that chapter." *Id.* § 7.102(c)(4), (11), (23). The Board's authority to establish and regulate curriculum is intertwined with its authority to adopt textbooks.

A school district that offers kindergarten through twelfth grade must offer a "required curriculum" comprising a "foundation curriculum" and an "enrichment curriculum." *See id.* § 28.002(a). The foundation curriculum includes

> (A)   English language arts;
>
> (B)   mathematics;
>
> (C)   science; and
>
> (D)   social studies, consisting of Texas, United States, and world history, government, and geography[.]

*Id.* § 28.002(a)(1). The enrichment curriculum includes

> (A)   to the extent possible, languages other than English;
>
> (B)   health, with emphasis on the importance of proper nutrition and exercise;
>
> (C)   physical education;
>
> (D)   fine arts;
>
> (E)   economics, with emphasis on the free enterprise system and its benefits;
>
> (F)   career and technology education; and
>
> (G)   technology applications.

*Id.* § 28.002(a)(2). The Board must identify by rule "the essential knowledge and skills of each subject of the required curriculum . . . that will be used in evaluating textbooks under Chapter 31." *Id.* § 28.002(c). (The essential knowledge and skills that the Board has identified by rule are known as the Texas Essential Knowledge and Skills, or "TEKS.") Section 28.002(h) requires the Board, "in the adoption of textbooks," to "foster the continuation of the tradition of teaching United States and Texas history and the free enterprise system." *Id.* § 28.002(h). The Board must adopt rules for implementing its curriculum-related duties. *See id.* § 28.002(i). *See generally* 19 TEX. ADMIN. CODE ch. 74 (2006) (Tex. Educ. Agency, Curriculum Requirements).

The Board must review and adopt textbooks for each subject in the foundation curriculum at least once every six years and for each subject in the enrichment curriculum in accordance with a schedule that the Board considers appropriate. *See* TEX. EDUC. CODE ANN. § 31.022(a)–(c) (Vernon 2006); 19 TEX. ADMIN. CODE § 66.21(a)–(b) (2006) (Tex. Educ. Agency, Review and Adoption Cycles). When textbooks for a particular subject in either the foundation or the enrichment curriculum are scheduled for the Board's review and adoption, section 31.024 requires the Board to adopt or reject each textbook submitted for consideration. *See* TEX. EDUC. CODE ANN. § 31.024(a) (Vernon 2006) (stating that each textbook must be placed on a conforming or nonconforming list or rejected for placement on either list). The Board must reject a textbook that contains factual errors. *See id.* § 31.023(b); 19 TEX. ADMIN. CODE § 66.66(c)(3) (2006) (Tex. Educ. Agency, Consideration and Adoption of Instructional Materials by the [Board]); *see also* 19 TEX. ADMIN. CODE § 66.10(c)(1) (2006) (Tex. Educ. Agency, Procedures Governing Violations of Statutes—Administrative Penalties) (defining the term "factual error" as "a verified error of fact or any error that would interfere with student learning"). Under section 31.023, the Board is required to separate textbooks without factual errors into two lists, "conforming" and "nonconforming":

> For each subject and grade level, the . . . Board . . . shall adopt two lists of textbooks. The conforming list includes each textbook submitted for the subject and grade level that meets applicable physical specifications adopted by the . . . Board . . . and contains material covering each element of the essential knowledge and skills of the subject and grade level as determined by the . . . Board . . . under Section 28.002 and adopted under Section 31.024. The nonconforming list includes each textbook submitted for the subject and grade level that:
>
> (1) meets applicable physical specifications adopted by the . . . Board . . . ;
>
> (2) contains material covering at least half, but not all, of the elements of the essential knowledge and skills of the subject and grade level; and
>
> (3) is adopted under Section 31.024.

TEX. EDUC. CODE ANN. § 31.023(a) (Vernon 2006). The Board adopts or rejects textbooks and determines whether to place accepted textbooks on the conforming or nonconforming list by majority vote. *See id.* § 31.024(a).

Section 31.024 requires the board to provide the conforming and nonconforming lists of adopted textbooks to each school district. *See id.* § 31.024(b). The nonconforming list must include the reasons an adopted textbook is ineligible for the conforming list. *See id.* Each school district then decides which textbooks to purchase. *See id.* § 31.101(a); 19 TEX. ADMIN. CODE § 66.104(a)–(d) (2006) (Tex. Educ. Agency, Selection of Instructional Materials by School Districts).

**B.     Analysis**

An administrative agency such as the Board has "those powers that the Legislature confers upon it in clear and express language." *Tex. Natural Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 377–78 (Tex. 2005). The authority given to the Board by the legislature concerns "those duties relating to school districts . . . assigned to the [B]oard by the constitution of this state or by this subchapter [Education Code chapter 7, subchapter B] or another provision of" the Education Code. TEX. EDUC. CODE ANN. § 7.102(a) (Vernon 2006). In addition to these express powers, an agency like the Board has those implied powers that are reasonably necessary to carry out the responsibilities the legislature has expressly bestowed. *See Pub. Util. Comm'n*, 901 S.W.2d at 407 (quoting *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137–38 (Tex. App.—Austin 1986, writ ref'd n.r.e.); *Kawasaki Motors v. Motor Vehicle Comm'n*, 855 S.W.2d 792, 798 (Tex. App.—Austin 1993, writ denied)); *accord Pub. Util. Comm'n v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001).

The Board has significant statutory authority over textbooks and textbook content in the adoption process. First, the Board must identify the TEKS standards by which all submitted textbooks will be judged. *See* TEX. EDUC. CODE ANN. § 28.002(c) (Vernon 2006). Second, the Board must evaluate whether each textbook submitted (a) contains factual errors and (b) meets physical specifications that the Board has set. *See id.* § 31.023(a)–(b). Third, of those textbooks that have no factual errors and meet the established physical standards, the Board must place the books on either the conforming or nonconforming list. *See id.* § 31.023(a). Fourth, "in the adoption of textbooks" the Board must "foster the continuation of the tradition of teaching United States and Texas history and the free enterprise system." *Id.* § 28.002(h). Because these are the only statutory provisions that give the Board authority over textbooks, the Board's authority over textbook content must fall within one of these powers.

We accordingly conclude that the Board may adopt general textbook content standards to the extent such standards fall within the express powers granted by the Education Code and those implied powers necessary to effectuate its express powers. The Board has express authority to adopt applicable physical standards with which textbooks must comply and the essential knowledge and skills of each subject of the required curriculum that will be used in evaluating textbooks. The Board must evaluate each textbook for compliance with the physical standards and the TEKS, must ascertain whether the book contains factual errors, and must consider whether the textbook fosters "the continuation of the tradition of teaching United States and Texas history and the free enterprise system." *See id.* §§ 28.002(h), 31.023(a)–(b); *see also* 19 TEX. ADMIN. CODE § 66.66(c) (2006) (Tex. Educ. Agency, Consideration and Adoption of Instructional Materials by the [Board]). To the extent Opinion DM-424 is read or applied inconsistently with this conclusion, that opinion is overruled.

**II.     Second Issue:  Whether the Board may adopt or reject ancillary materials**

You also ask whether the Board may review and adopt or reject "ancillaries provided by publishers at no additional cost to school districts that adopt their textbooks." Request Letter, *supra* note 1, at 1.

The Board's jurisdiction extends to the review of "textbooks." *See* TEX. EDUC. CODE ANN. §§ 31.022–.024 (Vernon 2006) (concerning textbook review, placing textbooks on lists, and adoption). Section 31.002 of the Education Code defines the term "textbook" to mean "a book, a system of instructional materials, or a combination of a book and supplementary instructional materials that conveys information to the student or otherwise contributes to the learning process, or an electronic textbook." *Id.* § 31.002(3). Although the components of the definition, such as "a system of instructional materials" and "supplementary instructional materials" are not further defined by statute, the statutory definition of "textbook" does not expressly refer to ancillary materials.

Instead, ancillary materials are referenced in section 31.151(a)(3), which sets out publishers' and manufacturers' duties. *See id.* § 31.151(a)(3). Under section 31.151(a)(3), publishers and manufacturers must "provide any textbook or *ancillary* item free of charge in this state to the same extent that the publisher or manufacturer provides the textbook or ancillary item free of charge to any state, public school, or school district in the United States." *Id.* (emphasis added); *accord* 19 TEX. ADMIN. CODE § 66.69 (2006) (Tex. Educ. Agency, Ancillary Materials).

We must presume that the legislature intended the entire statute to be effective and purposefully used every word. *See* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005); *see also Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000) (citing *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963)) ("every word in a statute is presumed to have been used for a purpose"). In general, where the legislature has used different words, we presume it intended to convey different meanings. *Cf. Guarantee Mut. Life Ins. Co. v. Harrison*, 358 S.W.2d 404, 406–07 (Tex. Civ. App.—Austin 1962, writ ref'd n.r.e.) (rejecting the contention that the phrases "of the same classes" and "of substantially the same grade" in one statute means the same as the phrase "similar securities" used in another statute).

Largely for this reason, Opinion DM-424 states that "the reference to ancillary items in section 31.151 suggests that the legislature envisioned" that publishers may supply schools with "items not within the definition of 'textbook.'" Tex. Att'y Gen. Op. No. DM-424 (1996) at 8. Moreover, assuming that publishers provide ancillary materials free of charge, the opinion concludes that "the board's authority to adopt or reject textbooks [does not extend] to consideration of ancillary items provided to school districts free of charge." *Id.* "Because the board is to select or reject textbooks from the books *submitted*," the opinion continues, "the submitting party may determine what materials are to be included for review" and the Board may consider only the materials submitted in deciding whether to adopt or reject a textbook. *Id.*

It is possible, as the opinion suggests, that the phrase "supplementary instructional materials," which is included within section 31.002's definition of "textbook," and the phrase "ancillary materials" are distinguishable because the words "supplementary" and "ancillary" may have slightly different connotations. The word "supplementary" connotes something "additional to what is normal, ordinary[,] or usual." *Cf. Boucher v. Tex. Tpk. Auth.*, 317 S.W.2d 594, 597 (Tex. Civ. App.—Texarkana 1958, no writ) (defining the term "supplemental"). By contrast, "as used in law," the word "ancillary" designates or pertains to "'a document, proceeding, officer or office, etc., that is subordinate to, or in aid of, another primary or principal one.'" *Am. Refractories Co. v.*

*Combustion Controls*, 70 S.W.3d 660, 663 (Mo. App. 2002) (quoting *Herhalser v. Herhalser*, 401 S.W.2d 187, 193 (Mo. App. 1966)).

But Opinion DM-424 wrongly concludes that the terms "supplementary instructional materials" and "ancillary materials" are mutually exclusive. *See* Tex. Att'y Gen. Op. No. DM-424 (1996) at 8. First, section 31.151(a)(3) is an example of a typical "most-favored-nations" contract clause[2] and, as such, it is wholly unrelated to the process by which the Board designates textbooks as conforming, nonconforming, or rejected. The phrase "ancillary materials" is thus a red herring in considering whether the statutory definition of the term "textbook" includes such materials for purposes of the textbook review process. Moreover, the opinion wrongly suggests that ancillary materials are textbooks for purposes of section 31.002(3) only if they are supplementary instructional materials. The opinion should instead have considered whether any of the items comprising the statutory definition of the term "textbook"—"a book, a system of instructional materials, or a combination of a book and supplementary instructional materials that conveys information to the student or otherwise contributes to the learning process, or an electronic textbook"—include the kinds of materials that the Board, in posing this question, considers ancillary materials. TEX. EDUC. CODE ANN. § 31.002(3) (Vernon 2006). For example, materials considered ancillary for purposes of section 31.151(a)(3) may be part of "a system of instructional materials" for purposes of the statutory definition of "textbook" and thus be textbooks within the Board's review jurisdiction. *See id.* Alternatively, certain ancillary materials may be "supplementary instructional materials" for purposes of the definition of "textbook" and thus be within the Board's review jurisdiction. *See id.* As Opinion DM-424 admits, the statutory phrase "ancillary materials," given its ordinary meaning, "would appear to come within the broad definition of 'textbook.'" Tex. Att'y Gen. Op. No. DM-424 (1996) at 8 (footnote omitted).

Opinion DM-424 further errs in suggesting that it is textbook publishers, not the Board, who determine what materials are textbooks subject to the Board's review jurisdiction. *See id.* (indicating that "the submitting party may determine what materials are to be included for review"). The Board is authorized to adopt a reasonable rule clarifying the kinds of materials that are within the definition of "textbook" by, for example, clarifying the phrases "system of instructional materials" or "supplementary instructional materials," and textbook publishers must comply with the rule. *See* TEX. EDUC. CODE ANN. § 31.003 (Vernon 2006) (authorizing the Board to adopt rules, "consistent with this chapter, for the adoption . . . of textbooks"). At present, however, the Board has not adopted any such rule.

---

[2]*Cf., e.g., PG&E Gas Transmission v. City of Edinburg*, 59 S.W.3d 225, 227 (Tex. App.—Corpus Christi 2001) (considering a most-favored-nations contract provision requiring, if the vendor should pay a higher percentage of gross receipts to any municipality other than Edinburg, that "this franchise shall automatically be amended to provide for the payment of such higher percent to the City of Edinburg"), *aff'd in relevant part sub nom. S. Union Co. v. City of Edinburg*, 129 S.W.3d 74 (Tex. 2003); *Tex. Utils. Elec. Co. v. City of Waco*, 919 S.W.2d 436, 438 (Tex. App.—Waco 1995, writ denied) (considering a most-favored-nations contract provision requiring Texas Utilities Electric Co., if it pays any municipality other than Waco a franchise or street rental fee higher than three percent of gross receipts, to then increase the percentage paid to Waco accordingly); *Enterprise-Laredo Assocs. v. Hachar's, Inc.*, 839 S.W.2d 822, 826 (Tex. App.—San Antonio 1992, writ denied) (considering a most-favored-nations contract clause requiring the vendor, Enterprise-Laredo Associates, should it make a later common-area-maintenance-charge agreement with a lessee other than Hachar, to give Hachar "the benefit of the later and more favorable arrangement").

In any event, whether particular materials considered ancillary for purposes of section 31.151(a)(3) are textbooks within the Board's review jurisdiction is a question requiring the resolution of fact issues and is not, therefore, amenable to the opinion process. *Cf.* Tex. Att'y Gen. Op. No. GA-0156 (2004) at 10 (stating that fact questions cannot be answered in the opinion process). In the absence of a Board rule reasonably clarifying the items comprising the definition of "textbook," we cannot conclude that ancillary materials are textbooks subject to Board review as a matter of law. Because it incorrectly analyzed the statutes with respect to this issue, we overrule Attorney General Opinion DM-424 to the extent it is inconsistent with this opinion.

## S U M M A R Y

Attorney General Opinion DM-424 is overruled to the extent that it concludes that the statutory definition of the term "textbook" cannot include materials that are ancillary for purposes of section 31.151(a)(3) of the Education Code. *See* Tex. Att'y Gen. Op. No. DM-424 (1996). Opinion DM-424 is further overruled to the extent it suggests that textbook publishers, not the Board, determine what materials are textbooks within the Board's review jurisdiction. The Board may adopt a reasonable rule further defining the components of the statutory definition of "textbook" by, for example, defining the phrase "system of instructional materials" or "supplementary instructional materials," and textbook publishers must comply with the rule. Whether a particular material considered ancillary for purposes of section 31.151(a)(3) is a textbook within the Board's jurisdiction to adopt or reject is a question of fact.

The legislature has provided the State Board of Education with certain specific authority over textbooks and their content. First, the Board must identify the TEKS standards by which all submitted textbooks will be judged. Second, the Board must evaluate whether each textbook submitted (a) contains factual errors and (b) meets physical specifications that the Board has set. Third, of those textbooks that have no factual errors and meet the established physical standards, the Board must place the books on either the conforming or nonconforming list. Fourth, "in the adoption of textbooks" the Board must "foster the continuation of the tradition of teaching United States and Texas history and the free enterprise system." The Board may adopt general textbook content standards that fall within these statutory authorizations, but the legislature has not authorized the Board to regulate textbook content to the extent such regulation falls outside these statutory provisions. To the extent Attorney General Opinion DM-424 is read or applied inconsistently with this opinion, it is overruled. *See* Tex. Att'y Gen. Op. No. DM-424 (1996).

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee